**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> VS. ) <br> ) <br> UNITED MICROELECTRONICS ) <br> CORPORATION, INC.; FUJIAN ) <br> JINHUA INTEGRATED CIRCUIT CO., ) <br> LTD; et al., ) <br> ) <br> Defendants. ) <br> _____) | **NO. CR 18-465 MMC** |

San Francisco, California
Wednesday, February 12, 2020

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
        DAVID L. ANDERSON
        United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
  BY: **LAURA E. VARTAIN**
      **ASSISTANT UNITED STATES ATTORNEY**

For Defendant United Microelectronics:
        LATHAM & WATKINS
        505 Montgomery Street - Suite 1900
        San Francisco, CA  94111
  BY: **LESLIE R. CALDWELL**
      **ATTORNEY AT LAW**

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:  Ruth Levine Ekhaus, RDR, FCRR
             Official Reporter, CSR No. 12219

**APPEARANCES: (CONTINUED)**

For Defendant Fujian Jinhua:
                          MORRISON & FOERSTER
                          425 Market Street
                          San Francisco, California  94105
                    **BY:   CHRISTINE Y. WONG**
                          **ATTORNEY AT LAW**

| | |
|---|---|
| <u>**Wednesday - February 12, 2020**</u> | <u>**2:19 p.m.**</u> |

**P R O C E E D I N G S**

---o0o---

    **THE CLERK:** Criminal Case 18-465, United States of America versus United Microelectronics and Fujian Jinhua Integrated.

    **THE COURT:** Okay. You're here alone this time.

    **MS. VARTAIN:** I think I was alone last time too, Your Honor. Laura Vartain for the United States.

    **THE COURT:** Thank you.

    **MS. WONG:** Christine Wong, for Fujian Jinhua. Good afternoon, Your Honor.

    **MS. CALDWELL:** Melissa Caldwell for United Microelectronics.

    **THE COURT:** Okay. What do you want to do today with this case?

    **MS. VARTAIN:** Your Honor, the parties would like to come back on April 15th. I believe the Court is available then. And I propose that we exclude time. The Government has produced significant discovery, is continuing to produce significant discovery. And I am hopeful that at that point the parties will be able to propose next steps to the Court regarding any briefing schedules that are necessary.

    **THE COURT:** Okay. All right. So that would be -- what's the day, again? April --

1           **MS. VARTAIN:**  Fifteenth.

2           **THE COURT:**  Fifteenth.  That's the joint request from
3    everyone?

4           **MS. CALDWELL:**  Yes, Your Honor.

5           **THE COURT:**  And I will exclude time then, from the
6    running of the speedy trial clock through April 15th for
7    effective preparation of counsel who are defending this case on
8    a variety of fronts.  And those interests are in the
9    defendants' best interest and outweigh any other interests the
10   defendants may have.  The matter is continued to April 15th,
11   2:15.

12          **MS. WONG:**  Your Honor, there are a few matters that we
13   want to just raise for your knowledge.  I'm --

14          **THE COURT:**  That's fine.

15          **MS. WONG:**  At this time we are not asking for the
16   Court's invention, but Ms. Vartain is absolutely right that the
17   Government has produced significant discovery.  They have
18   produced over 300,000 pages of discovery.

19       We have received two indices that cover about 26,000 pages
20   of that discovery.  We have requested a further index of the
21   materials.  The Government has said they will not produce such
22   an index, which leads me to my second point.

23        We also asked the Government to specify the documents that
24   were actually referenced in the indictment, the documents that
25   are the underlying trade secrets.  I understand that the

Government is not willing to identify those documents at this time.

We have gone through and tried to locate those specific documents and it's been very difficult to locate them. And in some instances, in particular there is at least one document that's described in an FBI 302 as an attachment, but the attachment wasn't produced. And the description of it seems to match with what has been described in the indictment as one of the documents containing trade secrets. So that further underscores our concern about having to review 300,000 documents without an index and without identification of what the specific trade secrets are.

**THE COURT:** Did you say you have some kind of index?

**MS. WONG:** We had two indices covering about 26,000 pages of the roughly 300,000 that's been produced so far.

**THE COURT:** Are you going to tell me, by the way, that there is nothing in there about your clients still?

**MS. WONG:** Absolutely. There is something about our clients. It's difficult for us to see what evidence there is that our client was aware of the conspiracy and did anything in furtherance of the conspiracy.

And, finally, we did ask the Government to review the confidentiality designations, which they did. And they de-designated about a 161 pages of documents as not being confidential, and we appreciate that effort. We do think there

1  is additional materials -- there are additional materials in
2  there that have been incorrectly designated.
3         **THE COURT:**  Okay.  Let's take it one step at a time.
4         **MS. WONG:**  Sure.
5         **THE COURT:**  With respect to the index, okay, you have
6  an index that in some way is workable as to some group of
7  papers, but you have more papers and, for those, nobody will
8  give you an index; is that what you're saying?
9         **MS. VARTAIN:**  Your Honor, if I could just for a
10 moment.  I hear Ms. Wong.  I don't believe I said I would not
11 give her an index for the documents and, in fact, I'm entirely
12 happy to give her whatever index I have.
13        **THE COURT:**  What I first understood her to say and
14 that's what I wanted to clarify was, she got one index and she
15 wanted a better one.  That's a different request then just
16 bring the index up to date, essentially, as we get more papers.
17    The other question was or the issue, I guess, has to do
18 with whether any of these documents are going to be relied on
19 in some way, or are being relied on by the Government.  Now,
20 the fact that they may not have been spelled out -- is anything
21 spelled out in this indictment, actually?
22        **MS. WONG:**  There are a number of documents that are
23 listed as containing -- there are descriptions of documents
24 that contain trade secrets.  So we have tried to take those
25 descriptions to match up with the documents that we are seeing

1  in the discovery, and we're having a difficult time matching
2  this.
3      **THE COURT:**  Let's say you got to trial in this case,
4  and they put in a bunch of documents that weren't within that
5  description.  Could they get a conviction based on those
6  documents?  In other words, are they limited to the indictment
7  and whatever their generic descriptions were?
8      I just want to find out how much you're going to learn by
9  any of this.
10     **MS. WONG:**  Certainly, I imagine they could introduce
11 other documents beyond the ones that are identified in the
12 indictment.  But, at the very least, if we could get the ones
13 that are referenced in the indictment identified that would
14 give us a place to start.
15     **THE COURT:**  Well, it would, at least, you know, give
16 you some kind of a handle for any discussion you might have
17 about the case.
18     Let me just ask, Ms. Vartain:  Do you know what documents
19 are being referenced in the indictment?
20     **MS. VARTAIN:**  Your Honor, I think on a general level I
21 have some sense of the core evidence in this case.
22     As Your Honor knows, I was not the prosecutor who indicted
23 the case.  I think the indictment is lengthy and sets out the
24 Government's theories of the case.
25     As the Court has identified, we are not bound at trial by

1  those documents.  Of course, the parties would produce
2  exhibit lists.  And so at this time I don't quite understand
3  the request for us to produce any documents outlined in the
4  indictment.  That's the discovery process.
5      **THE COURT:**  If they are laid out in some way by
6  general statement in the indictment -- maybe I could pull that
7  for a second.
8      Does the index help at all to, perhaps, categorize
9  documents?  I don't know what the index looks like.
10     **MS. WONG:**  The index is helpful in the sense that it
11 tells us this is a 302, an interview of this person.  It's
12 fairly high level.  I think we were hopeful that the index
13 would provide us more.  But, as I said, when we got into the
14 actual documents -- for example, the one document that was
15 missing from the attached 302.
16     And I also want to be clear on one thing.  Ms. Vartain is
17 absolutely right.  She did tell me she would produce what index
18 she had.  She produced an index that covered 26,000 documents.
19 Given that no other index was forthcoming, I assumed she wasn't
20 going to be producing another index for the 300,000 documents.
21     **THE COURT:**  Okay.  It's not clear to me that the
22 Government actually knows what it is you're asking for.  All
23 right?  In other words, I don't know if they can answer the
24 question.  And I don't think Ms. Vartain wants to get in a
25 position where someone says, "You told me you were giving us

1  everything in the indictment, and then we didn't get it."
2       So that may be a bit problematic.  I don't know if you're
3  ever going to be talking about trying to resolve the case or
4  not, that's hard to say.  If you were, then at some point it
5  would be helpful for the Government to give you some idea what
6  they are focusing on so that you can say, that's fine, it's
7  representative -- it mentions our client, but that's just a
8  contract, our client didn't know what the other people were
9  doing -- whatever you want say about that and whatever
10 Ms. Caldwell wants to say about her client as well.  But at
11 this stage, I don't know that I'm in a position to really start
12 ID-ing specific documents.
13      But the index, at least, hopefully, you will get and that
14 will help you to organize this.  Or, frankly, the case could
15 never be tried because they're just going to be immersed in
16 documents and keep saying that they can't possibly go to trial
17 because they haven't figured them all out yet.
18      Okay.  So now what else?
19          **MS. WONG:**  And that was it.  To be clear, Your Honor,
20 I wasn't asking for Your Honor's intervention at this time.
21          **THE COURT:**  You were just giving me a preview.
22          **MS. WONG:**  Sure.  No.  I appreciate that and
23 especially given that the Government intends to continue to
24 produce documents, we're hoping that some of these questions
25 will be resolved, and that's all.

| | |
|---|---|
| 1 | **THE COURT:** Okay. What about yourself, Ms. Caldwell? |
| 2 | **MS. CALDWELL:** Well, I just wanted to alert the Court, |
| 3 | we also are not seeking your intervention at this point. We've |
| 4 | been working closely with Ms. Vartain, who has been very |
| 5 | diligently working on this case. But, there are three |
| 6 | categories of documents that we have not gotten that we think |
| 7 | we are entitled to and need to have in order to assess what |
| 8 | motions we may have. Again, I'm not asking for your relief at |
| 9 | this point. |
| 10 | **THE COURT:** Have you asked Ms. Vartain for them? |
| 11 | **MS. CALDWELL:** Yes. We sent a discovery letter asking |
| 12 | for all these. |
| 13 | **THE COURT:** Okay. And were you told they are not |
| 14 | discoverable? |
| 15 | **MS. CALDWELL:** The first one is grand jury material. |
| 16 | And I recognize that it's not necessarily always produced at |
| 17 | this stage but, as I mentioned last time in court, there is a |
| 18 | reason why we need it in this case, which is that we believe |
| 19 | privileged information of -- our client's attorney/client |
| 20 | privileged information was presented to the grand jury and was |
| 21 | used to investigate the case. And we would likely make a |
| 22 | motion for appropriate relief, but we need to see the grand |
| 23 | jury presentation in order to be able to do that. So that's |
| 24 | the first one. |
| 25 | The second one, Your Honor, is that -- and I'm just giving |

1  you isolated examples; there are other things too.
2      But a lot of this, the investigation of this case by the
3  Government, was done post-indictment through the Taiwan
4  judicial assistance process.  So in other words, the U.S.
5  prosecutors would submit judicial assistance requests to Taiwan
6  with, presumably, questions -- which is what the treaty
7  envisions -- and then the Taiwanese authorities would actually
8  do the investigation in Taiwan, asking the questions submitted
9  by the U.S. Government.  We also believe that some of those
10 questions and some of those witnesses who were interviewed were
11 derived from the privileged material.  So that's another issue
12 that we might need to bring to the Court's attention.  Again,
13 I'm not asking for anything now.
14     And the third category of materials is materials that are
15 in the possession of Micron.  Micron has a sort of unique role
16 in this case in that they have -- as many companies have who
17 think their trade secrets have been stolen -- reported this to
18 the Government.  But before doing that, they did significant
19 investigation and produced materials to the Government.  They
20 also obtained the privileged material and, in fact, were the
21 ones who alerted the Government to its existence.  We don't
22 know, for example, did they -- do they have notes relating to
23 the privileged information, do they have other things.
24     There is also -- there are many examples.  I'll just -- in
25 the interest of time, I'm just going give you one more.

1   We know that the Government has produced in its discovery
2   an unsigned declaration from one of the individual defendants
3   who has not yet appeared in the Court, Kenny Wong.  It was a
4   declaration purporting -- it was a draft unsigned declaration
5   by Kenny Wong that we believe was created by Micron.
6   And we understand that at the time Mr. Wong was under
7   criminal investigation by the Government here.  Micron entered
8   into some form of quote/unquote, cooperation agreement with
9   Mr. Wong and offered him some form of leniency in the Taiwan
10  matter if he would cooperate with Micron.  And in the course of
11  that process, multiple iterations of -- I'll stop talking so
12  you can go home.  Multiple iterations of the declaration were
13  created.  And we understand there are significant factual
14  differences between them and we only have one, so we think
15  that's likely Brady material.
16  **THE COURT:**  If there are, first of all, things that
17  the Government is arguing are not discoverable, I may have to
18  hear that as a notice motion.
19  **MS. CALDWELL:**  Okay.
20  **THE COURT:**  Have you told Ms. Vartain what it is --
21  you don't have to state it on the record, but what it is that
22  you believe is the privilege -- you know, what the privileged
23  material is?
24  **MS. CALDWELL:**  Yes.  And we have had significant
25  discussions and we're continuing to have those discussions.

1   **THE COURT:** Has she told you all that there is nothing
2   about that in the grand jury transcript?
3   **MS. CALDWELL:** No. And I think it's evident from the
4   face of the indictment that evidence had to have been presented
5   to the grand jury.
6   I don't want to get into a dispute with Ms. Vartain
7   because she has been very cooperative and accommodating, but I
8   want to note that we may have to, if we don't get those
9   materials, we may need to ask for the Court's invention.
10  **THE COURT:** Okay. Fair enough.
11  Anything you can do to work some of this out -- I might
12  just like to say on that and, you know, this comes up in cases
13  other than yours all the time. In an effort to get things
14  moving along and not to totally bog down the motion practice,
15  if there is no real harm to what's being requested being turned
16  over, even if one wanted to take a legal position contrary and
17  say, "Look you're not entitled to it," if it's not going to do
18  damage in some way that, for example, the Government perceives
19  them, it may be that you're not really giving up any rights to
20  say, "All right, we'll do it because we're being nice." And so
21  then you don't have to get into the whole morass of the legal
22  issues. But you may have to, and if you do, you know where to
23  find me, assuming I'm not at home in bed with the covers pulled
24  over my head.
25  So all right. I think that's all we can probably do this

1  afternoon, unless you have anything Ms. Vartain.
2         **MS. VARTAIN:**  No, I'm aware of the issues.
3         **THE COURT:**  Okay.  Very good.  That concludes this
4  matter.
5         **MS. VARTAIN:**  Thank you, Your Honor.
6         **MS. WONG:**  Thank you, Your Honor.
7         **MS. CALDWELL:**  Feel better, Your Honor.
8              (Proceedings adjourned at 2:34 p.m.)
9                       ---o0o---
10
11              **CERTIFICATE OF REPORTER**
12         I certify that the foregoing is a correct transcript
13  from the record of proceedings in the above-entitled matter.
14
15  DATE:   Tuesday, February 18th, 2020
16
17
18
19  _____
20        Ruth Levine Ekhaus, RDR, FCRR, CSR No. 12219
            Official Reporter, U.S. District Court
21
22
23
24
25