1  Randall E. Kay (State Bar No. 149369)
   rekay@jonesday.com
2  JONES DAY
   4655 Executive Drive
3  Suite 1500
   San Diego, CA  92121.3134
4  Telephone: +1.858.314.1200
   Facsimile: +1.844.345.3178
5
   Neal J. Stephens (State Bar No. 152071)
6  nstephens@jonesday.com
   JONES DAY
7  1755 Embarcadero Road
   Palo Alto, CA 94303
8  Telephone: +1.650.739.3939
   Facsimile: +1.650.739.390
9
   Marcus S. Quintanilla (State Bar No. 205994)
10 mquintanilla@jonesday.com
   JONES DAY
11 555 California Street, Suite 2600
   San Francisco, CA 94104.1501
12 Telephone: +1.415.626.3939
   Facsimile: +1.415.875.5700
13
   Attorneys for Victim
14 MICRON TECHNOLOGY, INC.

15

                    UNITED STATES DISTRICT COURT
16
                 NORTHERN DISTRICT OF CALIFORNIA
17
                      SAN FRANCISCO DIVISION
18

19
   UNITED STATES OF AMERICA,           Case No. 3:18-cr-00465-MMC
20
                 Plaintiff,            **VICTIM MICRON TECHNOLOGY,**
21                                     **INC.'S, MOTION TO MODIFY AND**
           v.                          **TO QUASH**
22
   UNITED MICROELECTRONICS             Date:       July 21, 2021
23 CORPORATION et al.,                 Time:       2:15 pm
                                       Judge:      Hon. Maxine M. Chesney
24               Defendants.           Courtroom:  7, 19th Floor

25

26

27

28

NAI-1518763473v7                        Case No. 3:18-cr-00465-MMC

        MICRON TECHNOLOGY, INC.'S MOTION TO QUASH

**FILED**

**JUN 21 2021**

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

ORIGINAL

FILE VIA FAX

ORIGINAL

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on July 21, 2021 at 2:15 p.m., or as soon thereafter as the matter may be heard by the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 7, before the Honorable Maxine M. Chesney, nonparty victim Micron Technology, Inc. ("Micron") will, and hereby does, respectfully move to modify Requests 1-5 and 7, and to quash Requests 6 and 8-22, from the subpoena of Defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua"), served pursuant to Federal Rule of Criminal Procedure 17(c) on June 1, 2021.

This Motion is made on the grounds that compliance with Requests 1-22 as currently drafted would be oppressive and unreasonable because Jinhua has not complied with the requirements for a Rule 17(c) subpoena articulated by the Supreme Court in *United States v. Nixon,* 418 U.S. 683 (1974).

Micron's motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Declaration of Neal J. Stephens and exhibits filed concurrently herewith; the pleadings and papers on file in this action; the oral arguments of counsel; and such further argument and material as the Court may consider.

Dated: June 21, 2021

Respectfully submitted,

JONES DAY

By: *s/ Neal J. Stephens*
Neal J. Stephens

Attorneys for Victim
MICRON TECHNOLOGY, INC.

NAI-1518763473v7

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND ................................................................................................... 3

   A.  Jinhua's Indictment for Theft of Micron's Trade Secrets and Related Criminal and Civil Actions ................................................................................................. 3

   B.  Jinhua's Rule 17(c) Subpoena to Micron .......................................................... 4

III. LEGAL STANDARD ............................................................................................ 5

   A.  A Rule 17(c) Subpoena Is Not a Discovery Device ............................................ 5

   B.  Rule 17(c) Subpoenas Must Be Limited to Relevant, Admissible, and Specific Materials Not Otherwise Procurable from Another Source .................................... 6

   C.  A Rule 17(c) Subpoena Should Be Quashed or Modified Where It Strays Outside a Narrowly Limited Scope ................................................................................. 8

IV.  ARGUMENT ....................................................................................................... 9

   A.  The Court Should Modify Requests 1-5 and 7 to Bring Them within the Scope of Rule 17(c) ..................................................................................................... 9

   B.  Jinhua's Remaining Document Requests Should Be Quashed ............................ 10

      1.  Draft Policies and Investigations (Requests 6 and 8) .................................... 10

      2.  Reverse Engineering by Micron (Requests 10-12) ........................................ 12

      3.  Recruitment Efforts by Micron (Requests 16-17) ......................................... 14

      4.  Micron's Competitive Analyses and Communications (Requests 21-22) ................... 14

      5.  Micron's "Final List" of Development Tools (Request 15) ............................. 16

      6.  Communications with U.S. and Taiwan Governments (Requests 18-19) ................... 16

      7.  Micron's DRAM Plans in China (Request 20) ............................................. 17

      8.  Micron's Trade Secret and Patent Analyses (Requests 9 and 13) .............................. 18

      9.  Micron's Analysis of the Value of Its Trade Secrets (Request 14) ............................. 19

V.   CONCLUSION ................................................................................................... 20

1

## TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Bowman Dairy Co. v. United States,*
5      341 U.S. 214 (1951).................................................................................................6

6

*Brady v. Maryland,*
7      373 U.S. 83 (1963)...............................................................................................16

8

*Giglio v. United States,*
9      405 U.S. 150 (1972).............................................................................................16

10

*Hickman v. Taylor,*
11      329 U.S. 495 (1947).......................................................................................11, 19

12

*United States v. Arditti,*
       955 F.2d 331 (5th Cir. 1992)..............................................................................8, 14
13

*United States v. Beckford,*
14      964 F. Supp. 1010 (E.D. Va. 1997)........................................................................16

15

*United States v. Bookie,*
16      229 F.2d 130 (7th Cir. 1956).....................................................................................7

17

*United States v. Collins,*
18      No. 11-CR-00471, 2013 WL 1089908 (N.D. Cal. Mar. 15, 2013) ................................... passim

19

*United States v. Eden,*
20      659 F.2d 1376 (9th Cir. 1981)..............................................................................7, 9

21

*United States v. Fields,*
22      663 F.2d 880 (9th Cir. 1981)........................................................................7, 8, 13, 14

23

*United States v. Ganesh,*
       No. 16-cr-00211, 2018 WL 9732209 (N.D. Cal. June 20, 2018) ...................................8
24

*United States v. Hang,*
25      75 F.3d 1275 (8th Cir. 1996)......................................................................................6

26

*United States v. Johnson,*
27      No. CR 94-0048 SBA, 2008 WL 62281 (N.D. Cal. Jan. 4, 2008).................................. passim

28

*United States v. Layton*,
  90 F.R.D. 514 (N.D. Cal. 1981) ................................................................................6, 7, 12

*United States v. Louis*,
  No. 04 CR, 203, 2005 WL 180885 (S.D.N.Y. Jan. 27, 2005) ...............................8, 13

*United States v. Nixon*,
  418 U.S. 683 (1974) ......................................................................................... passim

*United States v. Reed*,
  726 F.2d 570 (9th Cir. 1984)............................................................................ passim

*United States v. Reyes*,
  239 F.R.D. 591 (N.D. Cal. 2006) ..................................................................... passim

*United States v. Tomison*,
  969 F. Supp. 587 (E.D. Cal. 1997)..........................................................................9, 18

*United States v. Vought*,
  69 F.3d 1498 (9th Cir. 1995) ..................................................................................7, 12

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ..............................................................................................11, 19

STATUTES

18 U.S.C. § 1831(a) ...........................................................................................................3

18 U.S.C. § 1832 ................................................................................................3, 7, 12, 14

18 U.S.C. § 1839(3) ......................................................................................7, 12, 14, 19

Jencks Act (18 U.S.C. § 3500) .......................................................................................16

U.S.S.G. § 2B1.1 ..............................................................................................................19

OTHER AUTHORITIES

2 CHARLES ALLAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &
  PROCEDURE § 275 (4th ed. 2021) ......................................................................8, 18

Fed. R. Civ. P. 45 ..............................................................................................................6

Fed. R. Crim. P. 16...................................................................................................2, 6, 16

Fed. R. Crim. P. 17................................................................................................. passim

MICRON TECHNOLOGY, INC.'S MOTION TO QUASH

Fed. R. Evid. 401 ............................................................................................................7

Fed. R. Evid. 801 ..................................................................................................... passim

Fed. R. Evid. 803 ..........................................................................................................11

## I.   INTRODUCTION

Defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua"), a Chinese state-owned entity, stands charged with three criminal counts: conspiracy to commit economic espionage; conspiracy to commit theft of trade secrets; and economic espionage.  These charges arise from a criminal scheme between Jinhua and co-conspirator United Microelectronics Corporation ("UMC")—which has already entered a guilty plea—to steal the trade secrets of victim Micron Technology, Inc. ("Micron") for Jinhua's use in the nascent Chinese dynamic-random access memory ("DRAM") industry.  Jinhua's criminal conduct, and the related criminal conduct of UMC and other conspirators, has given rise to criminal prosecutions here and in Taiwan, and a civil action before this Court.  That civil case, which Micron filed in December 2017, remains stayed at Jinhua's request pending the outcome of Jinhua's criminal trial.

In seeking to maintain the stay of discovery in Micron's parallel civil suit, Jinhua claimed there was a "considerable risk" that permitting civil discovery to proceed during the pendency of its criminal case would jeopardize the integrity of the criminal proceedings, permitting the prosecution to obtain information not discoverable under the Federal Rules of Criminal procedure.[1]  Yet, on June 1, 2021, Jinhua served Micron with a subpoena under Federal Rule of Criminal Procedure 17(c), containing 22 wide-ranging requests, all of which are overbroad and most of which have no relevance to the criminal proceeding.[2]  Jinhua's document requests represent an improper effort to obtain civil discovery, and they must be rejected.

In a good-faith effort to comply with the arguably legitimate elements of Jinhua's subpoena, Micron has produced documents responsive to Requests 1-5 and 7: non-privileged documents sufficient to show Micron's policies and procedures for the protection of its trade secrets.  Accordingly, with regard to Requests 1-5 and 7, Micron seeks only an order modifying them to conform to the proper scope of a Rule 17(c) subpoena, with which Micron is already

---

[1] *See* Def. Fujian Jinhua's Opp'n to Pl. Micron's Mot. to Lift Stay at 19, *Micron v. UMC*, No. 3:17-cv-06932 (N.D. Cal. Dec. 18, 2020), ECF No. 259.

[2] The subpoena is attached as Exhibit A to the Declaration of Neal J. Stephens ("Stephens Decl."), filed herewith.  Each of the requests, and the grounds for modifying or quashing them, are also set forth in Exhibit B to the Stephens Declaration.

1   complying.

2   Requests 6 and 8-22, however, are impermissible in all respects.  These requests fall into

3   the following categories, grouped according to their deficiencies:

4   • **Requests 6 and 8** demand privileged, inadmissible, irrelevant material.  These

5   requests seek Micron's draft policies related to protection of its trade secrets, and

6   documents relating to any investigation of any misappropriation, without

7   limitation as to the entity conducting the investigation or its target.

8   • **Requests 10-12, 16-17, and 21-22** seek information that is irrelevant and

9   inadmissible, and the requests themselves are insufficiently specific.  These

10   requests concern Micron's efforts to reverse engineer competitors' DRAM

11   technology; its recruitment of employees from other technology companies; and

12   any analysis it may have conducted of the business impact of UMC and Jinhua

13   entering the DRAM market.

14   • **Requests 15 and 18-20** seek information which, to the extent it is relevant, is

15   more readily available from the government in Rule 16 discovery, or publicly-

16   available sources, as opposed to a Rule 17 subpoena to Micron: the final list of

17   tools, equipment, and machines used to design and manufacture Micron's 25 nm

18   DRAM devices; communications between Micron and the U.S. and Taiwanese

19   governments regarding Jinhua's criminal prosecution; and Micron's plans to

20   manufacture or sell DRAM in China.

21   • **Requests 9, 13, and 14** call for privileged, inadmissible, and irrelevant documents.

22   They demand Micron's internal analysis of whether the documents and

23   information identified as trade secrets in the Indictment qualify as legally

24   protectable trade secrets; whether the patents identified in the Indictment

25   demonstrate misappropriation of these trade secrets; and the economic loss caused

26   by the misappropriation.

27   Requests 6 and 8-22 extend far beyond the permissible scope of a Rule 17(c) subpoena.

28   As the Supreme Court, the Ninth Circuit, and courts in this District have explained, Rule 17(c) is

1   not a discovery device.  Subpoenas under this rule must request *specific*, *relevant*, *admissible*,

2   non-privileged material *not otherwise obtainable* reasonably in advance of trial through due

3   diligence.  In other words, a criminal defendant may not do what Jinhua attempts here—fashion a

4   vague theory of defense and cast a wide net into its victim's files in the hope of turning up some

5   previously-unknown evidence.  Micron is producing appropriate documents responsive to

6   Requests 1-5 and 7, but the remaining requests in Jinhua's subpoena are impermissible and

7   should be quashed.  Jinhua cannot use its Rule 17(c) subpoena as an end-run around the stay of

8   civil discovery.

9   II.   **BACKGROUND**

10      A.   **Jinhua's Indictment for Theft of Micron's Trade Secrets and Related**
             **Criminal and Civil Actions**
11

12      Micron is a global leader in the semiconductor industry and the only United States-based

13  company that manufactures DRAM.  (*See* Indictment at 17–18 ¶ 10, ECF No. 1.)  On

14  September 27, 2018, the Department of Justice indicted Jinhua, as well as Taiwanese

15  semiconductor chip foundry UMC and three employees who left Micron for UMC—Stephen

16  Chen ("Chen"), J.T. Ho ("Ho"), and Kenny Wang ("Wang")—for theft of Micron trade secrets

17  and international commercial espionage.  (*Id.* at 2–13.)  The Indictment describes a scheme

18  undertaken by Jinhua, UMC, Chen, Ho, and Wang to steal thousands of Micron trade-secret files,

19  use the trade secrets to help UMC develop DRAM technology, and transfer the stolen technology

20  to Jinhua for use in China.  (*Id.* ¶¶ 16–53, 62–63.)  Jinhua is charged with conspiring with UMC

21  and the other defendants to commit economic espionage and to commit theft of trade secrets, and

22  with economic espionage, all in violation of 18 U.S.C. § 1831(a) and 1832(a)(5).  (*Id.* at 4–5.)

23      On October 28, 2020, UMC pleaded guilty to a superseding information, admitting to

24  theft of Micron trade secrets in violation of 18 U.S.C. § 1832(a)(3) and agreeing to pay a

25  $60 million fine.  (Plea Agreement at 2 ¶ 1, 12 ¶ 10(a), ECF No. 148.)  Chen, Ho, and Wang have

26  yet to appear in the criminal action, and Jinhua's trial is set for February 14, 2022.  (Am. Order

27  for Crim. Pretrial Preparation at 1 (Apr. 15, 2021), ECF No. 161.)

28      Jinhua's indictment before this Court followed initiation of a criminal action in Taiwan, in

1   which the Taiwanese court ultimately convicted Ho and Wang of stealing a vast number of

2   Micron trade secret files.  The court sentenced Ho and Wang to multiple-year prison terms and

3   imposed a USD $3.4 million criminal fine on their employer, UMC.  (Decl. of Jeanne Wang ¶ 2,

4   Ex. 1 at 5–12, *Micron v. UMC*, 3:17-cv-06932 (Dec. 4, 2020), ECF No. 256-3.)

5          Jinhua's criminal indictment also followed Micron's filing, on December 5, 2017, of a

6   civil lawsuit for trade secret misappropriation against Jinhua and UMC (Compl., *Micron v. UMC*,

7   ECF No. 1),[3] which was related to this case by the Court's November 14, 2018 order.  (ECF

8   No. 135.)  Jinhua and UMC moved for a stay of Micron's civil case in light of the U.S.

9   Indictment, which the Court granted on July 11, 2019.  (ECF No. 247.)  Jinhua then opposed

10  Micron's subsequent motion, filed on December 4, 2020 (ECF No. 256), to lift the stay based on

11  UMC's criminal plea and the Taiwanese convictions and related judgment.  Jinhua argued, among

12  other things, that "there is considerable risk that the broader scope of civil discovery here will

13  impair the integrity of the parallel criminal proceeding."  (ECF No. 259 at 19.)  Yet Jinhua now

14  effectively seeks an end-run around its civil stay with a sweeping subpoena seeking discovery

15  from victim Micron that is well beyond the bounds of Rule 17(c).

16         **B.      Jinhua's Rule 17(c) Subpoena to Micron**

17         On May 17, 2021, Jinhua applied *ex parte* and under seal for a trial subpoena directed to

18  Micron under Federal Rule of Criminal Procedure 17(c).  (ECF No. 180.)  The Court granted

19  Jinhua's application, but noted that it did so without determining Jinhua's compliance with the

20  requirements of Rule 17(c), which it would consider once Micron had a chance to respond.  (*See*

21  *id.*)  The Court further ordered Jinhua to serve a copy of the Court's order on Micron, along with

22  the subpoena, which Jinhua did on June 1, 2021.  (Stephens Decl. ¶ 2.)  Micron has not, however,

23  had the benefit of reviewing Jinhua's 24-page motion seeking issuance of the subpoena, which

24  the Court referenced in its Order.  (*See* ECF No. 180.)

25         Jinhua's subpoena includes 22 sweeping discovery requests covering a time period well

26  beyond the termination of Chen, Ho, and Wang's employment at Micron.  (*Compare* Subpoena,

27

28         [3] All citations in this paragraph are to *Micron v. UMC*, Case No. 3:17-cv-06932-MMC.

1   Stephens Decl. Ex. A, at 12 ¶ 14 (defining "Relevant Time Period" to extend from October 1,

2   2015 to September 27, 2018) *with* Indictment, ECF No. 1 at 16–17 ¶¶ 8, 9 (alleging that Chen,

3   Ho, and Wang had left Micron for UMC by April 2016).)[4] And the subpoena calls for *any* and *all*

4   documents falling within each of the Requests' broad categories, rather than for specific

5   documents reasonably expected to be in Micron's possession. (Subpoena, Stephens Decl. Ex. A,

6   at 14 ¶ 1–2 (Instruction 1 states: "Pursuant to this subpoena, you must make all responsive

7   documents and things available for Jinhua's inspection"; Instruction 2 adds that the Requests

8   "appl[y] to any requested documents that were created, dated, transmitted, received, copied,

9   downloaded and/or uploaded on a date within the specified date range.").)

10       While all 22 Requests exceed the scope of a Rule 17(c) subpoena, Micron nevertheless

11  has produced documents properly responsive to Requests 1-5 and 7, and will produce any

12  additional, properly responsive documents identified during the completion of its reasonably

13  diligent search by July 31, 2021. (Stephens Decl. ¶ 4.) Micron now respectfully requests that the

14  Court: (1) modify Requests 1-5 and 7 so that they only seek documents that fall within the

15  permissible scope of Rule 17(c)—and which Micron is already producing; and (2) quash the

16  remaining Requests—No. 6 and Nos. 8 through 22—because responding would be unreasonable

17  and oppressive. On their face, the Requests disregard the limits imposed on a Rule 17(c)

18  subpoena by Supreme Court precedent and the Federal Rules of Criminal Procedure.

19  **III.    LEGAL STANDARD**

20       **A.    A Rule 17(c) Subpoena Is Not a Discovery Device**

21       Federal Rule of Criminal Procedure 17(c) permits a criminal defendant to compel

22  production of "books, papers, documents, data, or other objects." Fed. R. Crim. P. 17(c)(1). The

23  rule further provides that a defendant may obtain a court order for "a subpoena requiring the

24  production of personal or confidential information about a victim," which may be served on a

25  third party. Fed. R. Crim. P. 17(c)(3).

26       Rule 17(c) was not, however, "intended as a discovery device, or to allow a blind fishing

27  _____

28  [4] All citations to Stephens Decl. Ex. A are to the Declaration page numbers, rather than
    the subpoena page numbers.

1  expedition seeking unknown evidence." *United States v. Reed,* 726 F.2d 570, 577 (9th Cir. 1984)

2  (internal quotation marks and citation omitted). "In contrast to its broader cousin in civil

3  procedure—Federal Rule of Civil Procedure 45—Rule 17(c) is narrow in scope." *United States*

4  *v. Collins,* No. 11-CR-00471, 2013 WL 1089908, at *2 (N.D. Cal. Mar. 15, 2013); *see also*

5  *United States v. Reyes,* 239 F.R.D. 591, 597 (N.D. Cal. 2006) ("Rule 17(c) is not as broad as its

6  plain language suggests, however, and it is more narrow in scope than the corollary rules of civil

7  procedure, which permit broad discovery.").[5] "'[M]ere hope' that the documents will produce

8  favorable evidence will not support the issuance of a subpoena." *United States v. Johnson,*

9  No. CR 94-0048, 2008 WL 62281, at *2 (N.D. Cal. Jan. 4, 2008) (quoting *United States v. Hang,*

10  75 F.3d 1275, 1283 (8th Cir. 1996)); *see also United States v. Layton,* 90 F.R.D. 514, 516 (N.D.

11  Cal. 1981) (same).

12      **B.**    **Rule 17(c) Subpoenas Must Be Limited to Relevant, Admissible, and Specific Materials Not Otherwise Procurable from Another Source**

13

14      The Supreme Court has directed that a party seeking a Rule 17(c) subpoena must show:

15  "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable

16  reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly

17  prepare for trial without such production . . .; and (4) that the application is made in good faith

18  and is not intended as a general 'fishing expedition.'" *Nixon,* 418 U.S. at 699–700 (finding

19  Rule 17(c) subpoena appropriate where prosecutor sought "certain tapes, memoranda, papers,

20  transcripts, or other writings relating to certain precisely identified meetings between the

21  President and others"). Thus, in addition to demonstrating that it cannot reasonably obtain the

22  requested materials from another source, the subpoenaing party also "must clear three hurdles:

23

24

25      [5] Rule 16 remains the primary (albeit limited) means by which criminal defendants may make discovery requests, and Rule 17 was not intended to expand that process: "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of

26  discovery in the broadest terms. . . . Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place *before*

27  trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220 (1951) (citation omitted); *accord United States v. Nixon,* 418 U.S. 683, 698–99

28  (1974).

1    (1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 688.[6]

2       **Relevancy.** A Rule 17(c) subpoena must seek evidence that would have a tendency to

3 make a fact of consequence in determining the action more or less probable than it would be

4 without the evidence. *Nixon*, 418 U.S. at 700 (Rule 17(c) subpoena must seek relevant evidence);

5 Fed. R. Evid. 401 (defining relevancy). The subpoenaing party "bears the burden of showing in

6 what respect the documents sought are material to any issue in the case." *Layton*, 90 F.R.D. at

7 516 (citing *United States v. Bookie*, 229 F.2d 130, 133 (7th Cir. 1956)). "A mere hope that the

8 documents, if produced, may contain evidence favorable to the defendant's case will not suffice."

9 *Id.* "[V]ague and conclusory assertions of relevance" also are not enough. *United States v.*

10 *Vought*, 69 F.3d 1498, 1502 (9th Cir. 1995). Rather, to demonstrate relevance, the subpoenaing

11 party must "show[] with a good deal of precision the substance of the material sought and the

12 purpose for which it would be offered." *Layton*, 90 F.R.D. at 517.

13       In this case, the government must prove that Trade Secrets 1-8 are trade secrets, meaning

14 that Micron has taken reasonable measures to keep them secret and that they derive independent

15 economic value from not being generally known, *see* 18 U.S.C. § 1839(3), and that Jinhua

16 knowingly and wrongfully received and possessed Micron's trade secrets, and conspired to steal

17 them. *See* 18 U.S.C. § 1832(a); (Crim. Dkt. 1 ¶¶ 17, 51, 63.) To be permissible, Jinhua's

18 subpoena must target only evidence that would make it more or less likely that Trade Secrets 1-8

19 qualify as trade secrets, or that Jinhua received, possessed, and conspired to steal them.

20       **Admissibility.** A Rule 17(c) subpoena must seek only admissible documents. *Nixon*, 418

21 U.S. at 688. Requests for hearsay documents are not permitted absent demonstration that a

22 hearsay exception applies. *See* Fed. R. Evid. 801(c); *Collins*, 2013 WL 1089908, at *4

23 (explaining that subpoena requests failed *Nixon's* admissibility test where they called for hearsay,

24 and the requesting party "offer[ed] no . . . justification anywhere in their papers or oral argument"

25

26       [6] The Ninth Circuit has consistently applied the *Nixon* test to Rule 17(c) subpoenas issued
to nonparties as well as the government, finding "no basis for using a lesser evidentiary standard

27 merely because production is sought from a third party rather than the United States." *United*
*States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (quashing subpoena); *see also Reed*, 726 F.2d

28 at 577 (applying *Nixon* test); *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) (same).

for any hearsay exception). Nor can the subpoenaing party circumvent lack of admissibility by claiming that it seeks evidence for use as impeachment. "The Ninth Circuit has also made clear that seeking documents or other materials solely for purposes of impeachment 'is generally insufficient to justify the pretrial production of documents. . . .'" *Johnson*, 2008 WL 62281, at *2 (*quoting Fields*, 663 F.2d at 881).

**Specificity.** Rule 17(c)'s "intended purpose" is "to secure the production for a court proceeding of specific admissible evidence." *Reyes*, 239 F.R.D. at 605–06 (citing *United States v. Louis*, No. 04 CR, 203, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005)) (quashing subpoena seeking production of "any and all information related to stock options issued between 1994 and 1999"); *see also Collins*, 2013 WL 1089908, at *4 (quashing subpoena that sought "'all' 'documents' and 'communications' relating to [denial of service] attacks that took place over several weeks"). "The requirement of 'specificity' under Rule 17 is not satisfied if the defendant does not know what the evidence consists of or what it will show." *Johnson*, 2008 WL 62281, at *4 (citing *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992)); *see also Reed,* 726 F.2d at 577 (affirming denial of subpoena that "did not request specific documents, but sought entire arson investigation files," explaining that Rule 17(c) "was not intended . . . to allow a blind fishing expedition seeking unknown evidence") (quotation marks and citation omitted).

### C.   A Rule 17(c) Subpoena Should Be Quashed or Modified Where It Strays Outside a Narrowly Limited Scope

"[T]he court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). This encompasses the circumstance where, as here, a purported criminal subpoena has the breadth of a civil one, violating any one of the precepts laid out in *Nixon. See United States v. Ganesh*, No. 16-cr-00211, 2018 WL 9732209, at *1 (N.D. Cal. June 20, 2018) (quoting *Nixon*, 418 U.S. at 698 ("In interpreting the 'unreasonable or oppressive' standard, the Supreme Court explained that Rule 17(c) is 'not intended to provide a means of discovery for criminal cases.'").

A Rule 17(c) subpoena also "should be quashed or modified if it calls for privileged matter." *Reyes*, 239 F.R.D. at 598 (quoting 2 CHARLES ALLAN WRIGHT & ARTHUR R. MILLER,

1   FEDERAL PRACTICE & PROCEDURE § 275 (4th ed. 2021), at 258; *United States v. Tomison*, 969 F.

2   Supp. 587, 597–98 (E.D. Cal. 1997)).

3       The party seeking a Rule 17(c) subpoena—not the party moving to quash it—bears the

4   burden of demonstrating compliance with the Rule's stringent requirements. *Eden*, 659 F.2d at

5   1381 (affirming order quashing subpoena where the issuing party "failed to meet his burden").

6   **IV.     ARGUMENT**

7       **A.     The Court Should Modify Requests 1-5 and 7 to Bring Them within the Scope
8           of Rule 17(c)**

9       Because Jinhua filed its motion requesting issuance of its subpoena *ex parte* and under

10  seal, Micron is left to guess at the purported relevance and materiality of Jinhua's requests.  Most

11  of the requests, however, are plainly irrelevant, seek inadmissible hearsay, or are impermissibly

12  indefinite and overbroad and, therefore, should be quashed in their entirety.

13      Requests 1-5 and 7 are overbroad, ill-defined, and extend to material that would not be

14  admissible.  However, they do appear to target an issue of at least some relevance—*i.e.,* Micron's

15  efforts to protect its trade secrets—so Micron is producing documents sufficient to respond to an

16  appropriately modified document request on these topics.

17      **Request 1:** "All versions of Micron's employee handbook(s) that were in effect during the
18      Relevant Time Period."  (Stephens Decl., Ex. A at 17.)

19      **Request 2:** "Micron's policies and procedures governing the protection and secrecy of
        confidential and proprietary materials during the Relevant Time Period. . . ."  (*Id.*)

20      **Request 3:** "Documents reflecting any training provided to Micron officers, directors,
21      employees, contractors or vendors during the Relevant Time Period regarding Micron's
        policies and procedures governing (a) the protection of confidential and proprietary
22      materials; and (b) the prohibition on importing or accessing confidential or proprietary
        information from other companies."  (*Id.*)

23      **Request 4:** "Micron's policies and procedures for new officers, directors, employees or
24      contractors during the Relevant Time Period governing what materials, if any, they were
        allowed to bring from former employers or other companies, and any Micron procedures
25      designed to prevent them from bringing confidential or proprietary information from other
        companies to Micron."  (*Id.* at 17–18.)

26      **Request 5:** "Micron's policies and procedures during the Relevant Time Period governing
27      the return of confidential and proprietary information by officers, directors, employees or
        contractors who are terminated, resign or otherwise cease working for Micron, including
28      any restrictions on their ability to transport or take confidential or propriety materials or
        information with them after leaving Micron."  (*Id.* at 18.)

**Request 7:** "Documents reflecting Micron's enforcement of its policies and procedures governing the protection of confidential and proprietary information during the Relevant Time Period, including any suspension, termination or other disciplinary action taken during the Relevant Time Period against officers, directors, employees or contractors who violated such policies." (*Id.*)

Nevertheless, Requests 1-5 and 7 significantly exceed the permissible bounds of a Rule 17(c) subpoena. While they call for some specific, relevant documents, their reach extends to voluminous irrelevant and unidentified material. As explained by the Subpoena's Instructions, these requests demand production of "any" and "all" documents responsive to each Request. (*See* Subpoena, Stephens Decl. Ex. A, at 14 (Instructions 1 and 2).) The document requests also fail to limit the scope to the relevant employees (Chen, Ho, and Wang) or time period (when Chen, Ho, and Wang were actually employed at Micron). As a result, these defective requests fall well outside the reach of Rule 17(c). *See, e.g., Reed,* 726 F.2d at 577 (affirming denial of subpoena seeking entire arson investigation files).

Micron therefore offers a practical solution to these requests. Micron requests that the Court modify Requests 1-5 and 7 so that they require Micron to produce non-privileged documents, identified through a reasonably diligent search, sufficient to show each category of requested information. Micron has already produced documents fitting this description, and it will supplement its production if needed once its review of relevant files and records is complete. (Stephens Decl. ¶ 4.)

## B.  Jinhua's Remaining Document Requests Should Be Quashed

### 1.  Draft Policies and Investigations (Requests 6 and 8)

Requests 6 and 8 seek internal drafts and revisions to Micron's policies related to the protection of its trade secrets, and "[d]ocuments reflecting any investigation of alleged misappropriation" by "anyone."

**Request 6:** "Documents reflecting any drafts or revisions that Micron made to its policies or procedures produced in response to Requests 2, 4, and 5, above, . . ." (Stephens Decl., Ex. A at 18.)

**Request 8:** "Documents reflecting any investigation of alleged misappropriation of confidential or proprietary information, including Alleged Trade Secrets 1-8, by Kenny Wang (a/k/a Wang Yongming), J.T. Ho (a/k/a Jianting Ho), Neil Lee (a/k/a Fuzhe Lee or

Fuhze Li) or anyone else, and any punishment or disciplinary action taken against such persons during the Relevant Time Period." (*Id.* at 18–19.)

In addition to suffering from defects of overbreadth and lack of specificity—for example, Request 8 calls for "any investigation," whether conducted by Micron or seemingly any other entity, regarding misappropriation by "anyone," regardless of whether that person is a party or a complete stranger to this case—these requests fail because they seek privileged, inadmissible, and wholly irrelevant material. First, these requests invade potential communications between Micron and its attorneys made for the purpose of seeking legal advice regarding any need for changes to its policies for the protection of trade secrets, as well as investigative efforts to determine whether acts of misappropriation occurred. Such communications would fall squarely under the protections of attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (attorney-client privilege applies in the context of an investigation conducted by a company's attorneys). These requests also call directly for production of protected attorney work product, including both the draft policies themselves and attorney-prepared documents created in the course of investigating possible misappropriation. *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (The attorney work product doctrine protects "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties."). A Rule 17(c) subpoena "should be quashed or modified if it calls for privileged matter." *Reyes*, 239 F.R.D. at 598 (quotation and citations omitted).

Second, Requests 6 and 8 call for inadmissible documents. Hearsay exceptions related to Jinhua's mental state or for business records would not apply to these documents, which Chen, Ho, and Wang would not have seen, *see* Fed. R. Evid. 801, 803, and which may include attorney summaries, notes, and memoranda. *See Reyes*, 239 F.R.D. at 600 (opining that attorney notes, summaries, and memoranda related to witness interviews "include[] only hearsay").

Third, even if Requests 6 and 8 did not impermissibly demand privileged, inadmissible material, they do not seek relevant evidence. Micron's *draft* policies and procedures are not relevant to whether Trade Secrets 1-8 qualify as legally-protectable trade secrets. Only *final*, implemented polices are relevant in assessing a victim's reasonable protective measures.

1  Similarly, any investigation that Micron conducted regarding acts of misappropriation after-the-

2  fact has no bearing on whether Micron's protective measures were reasonable. *See* 18 U.S.C.

3  § 1839(3).  Nor can Jinhua claim that any investigation Micron undertook regarding whether

4  misappropriation occurred is relevant to the ultimate question in this case—whether Jinhua

5  participated in a scheme to misappropriate Micron's trade secrets. *See* 18 U.S.C. § 1832(a).

6  "[A]n attorney's formal opinion about whether any crimes were committed would not be relevant

7  evidence—that determination is for a jury of [defendant's] peers to make." *Reyes*, 239 F.R.D. at

8  600.

9          **2.**    **Reverse Engineering by Micron (Requests 10-12)**

10        Requests 10-12 concern efforts by Micron to reverse engineer competitors' DRAM

11  technology—spanning all of Micron's competitors, all aspects of DRAM technology, and a time

12  period ranging from June 1, 2012 through the present—as well as a broad array of licensing

13  agreements.

14       **Request 10:** "Reverse engineering or 'Competitor Analysis' reports prepared by Micron
15       reflecting Micron's analysis of other companies' DRAM technology, including reports that
     relate to DRAM technology by Elpida, Samsung, and/or Hynix that were prepared between
16       January 1, 2013 and the present." (Stephens Decl., Ex. A at 19.)

17       **Request 11:** "Third-party reverse engineering reports (e.g., TechInsights, Chipworks) that
     were purchased by Micron regarding Elpida's, Samsung's and/or Hynix's DRAM
18       technology dated between January 1, 2013 and the present." (*Id.*)

19       **Request 12:** "Documents reflecting Micron's attempts to reverse engineer Elpida's 25 nm
     DRAM device from June 1, 2012 through December 31, 2013 and any licensing agreements
20       entered into between Micron or Elpida and any third parties regarding the production,
     development or manufacture of 25nm DRAM technology and/or devices." (*Id.*)

21        First, these requests bear no relevance to the elements the government must prove at trial.

22  *See Layton*, 90 F.R.D. at 516 ("A mere hope that the documents, if produced, may contain

23  evidence favorable to the defendant's case will not suffice."); *Vought*, 69 F.3d at 1502 ("Vague

24  and conclusory assertions of relevance" are not sufficient.).  Any effort Micron made to

25  understand its competitors' technology, and any licensing agreements it entered—even if limited

26  to the technology at issue and the time period relevant to this case, which these requests are not—

27  has no bearing on whether Trade Secrets 1-8 qualify for trade secret protection, *see* 18 U.S.C. §

28  1839(3), or whether Jinhua received, possessed, or conspired to steal them. *See* 18 U.S.C. §

                        - 12 -            
**MICRON TECHNOLOGY, INC.'S MOTION TO QUASH**

1    1832(a).

2           Second, to the extent Jinhua plans to use documents obtained through Requests 10-12 for

3    the truth of the matter asserted, the admissibility requirement poses a second, independent basis to

4    quash them. *Nixon*, 418 U.S. at 700.  These requests—such as the nebulous demand for

5    "documents reflecting" Micron's attempts to reverse engineer technology—call for hearsay

6    documents without any apparent exception.  *See* Fed. R. Evid. 801.  And if Jinhua's aim is to

7    collect impeachment material, "[t]he Ninth Circuit has also made clear that seeking documents or

8    other materials solely for purposes of impeachment 'is generally insufficient to justify the pretrial

9    production of documents . . . .' *Johnson*, 2008 WL 62281, at *2 (*quoting Fields*, 663 F.2d at 881).

10          Finally, Requests 10-12 fall short of the specificity required for a Rule 17(c) subpoena,

11   because they do not seek specific, identifiable documents.  *See Reed*, 726 F.2d at 577 (explaining

12   that Rule 17(c) "was not intended . . . to allow a blind fishing expedition seeking unknown

13   evidence") (citation omitted).  Instead, these requests span an eight-year time frame and lack any

14   clear limitation regarding the aspect of DRAM technology or competitor companies involved.

15   This breadth, coupled with the Instructions' mandate that Micron produce any and all responsive

16   documents, "suggests that [Jinhua] 'seeks to obtain information helpful to the defense by

17   examining large quantities of documents, rather than to use Rule 17 for its intended purpose—to

18   secure the production for a court proceeding of specific admissible evidence.'" *Reyes*, 239 F.R.D.

19   at 605–06 (quoting *Louis*, 2005 WL 180885, at *5) ("Where, as here, a defendant requests any

20   and all information related to a particular policy or procedure, courts have rejected such requests

21   as an abuse of Rule 17(c).").

22          Rather than identify specific evidence subject to subpoena, Jinhua appears to have

23   concocted "a particular theory of defense"—that some elements of what the government has

24   identified as Micron's trade secrets may appear in reverse engineering reports, or in licensed

25   technology[7]—"and then cast[] a wide net with the goal of reeling in something to support it."

26   *Reyes*, 239 F.R.D. at 606.  But courts, including courts in this District, reject this approach.  *See*

27   _____

28          [7] Without seeing Jinhua's *ex parte* motion for issuance of the subpoena, Micron can only
     speculate as to the explanation for Jinhua's wide-ranging requests.

*id.* ("A specific theory of defense, however, is not the same thing as a request for specific information. Rule 17(c) demands the latter, and [defendant's] subpoena provides only the former."); *see also Johnson*, 2008 WL 62281, at *4 (citing *Arditti*, 955 F.2d at 346) ("The requirement of 'specificity' under Rule 17 is not satisfied if the defendant does not know what the evidence consists of or what it will show.").

### 3. Recruitment Efforts by Micron (Requests 16-17)

Requests 16-17 demand documents related to Micron's recruitment of employees from other "technology companies," without any limitation as to which companies or which employees, and covering a time period lasting three years.

> **Request 16:** "Documents reflecting Micron's policies and procedures regarding the recruitment of employees from other technology companies during the Relevant Time Period." (Stephens Decl., Ex. A at 20.)
>
> **Request 17:** "Documents reflecting Micron's recruitment of, or attempts to recruit, any employees from other technology companies, including Samsung, Hynix, UMC, Elpida, Rexchip, or Powerchip during the Relevant Time Period." (*Id.*)

These requests, too, do not seek relevant evidence. Micron's recruiting efforts and practices have nothing to do with the elements the government must prove at trial—that Trade Secrets 1-8 qualify for trade secret protection, *see* 18 U.S.C. § 1839(3), and that Jinhua received, possessed, or conspired to steal them. *See* 18 U.S.C. § 1832(a).

These requests also do not target admissible evidence. Rather, they call for hearsay documents without any apparent exception. *See* Fed. R. Evid. 801; *Johnson*, 2008 WL 62281, at *2 (*quoting Fields*, 663 F.2d at 881) (Rule 17(c) subpoena not intended to procure impeachment evidence).

Nor do these requests meet the specificity requirement. Sweeping requests for documents reflecting Micron's recruitment—and even *attempts* to recruit—any employee from any other, unspecified technology company for a three-year period are a far cry from the subpoena for "certain tapes, memoranda, papers, transcripts, or other writings relating to certain precisely identified meetings" approved by the court in *Nixon*. 418 U.S. at 688.

### 4. Micron's Competitive Analyses and Communications (Requests 21-22)

Request 21-22 make a broad demand for unspecified documents "reflecting Micron's

analysis" of the business impact of UMC and Jinhua entering the DRAM market, and any

attempts Micron made to convince Jinhua to license Micron's DRAM technology instead,

"including all communications between Micron and UMC on this subject."

> **Request 21:** "Documents reflecting Micron's analysis of how Micron's potential sales and business would be affected by Jinhua's Technology Cooperation Agreement with UMC and UMC and Jinhua's entrance into the DRAM market." (Stephens Decl., Ex. A at 20.)
>
> **Request 22:** "Documents reflecting Micron's attempt(s) to convince UMC to terminate its Technology Cooperation Agreement with Jinhua and convince Jinhua to license DRAM technology from Micron instead, including all communications between Micron and UMC on this subject." (*Id.*)

These requests again fail the relevancy test. *See Nixon*, 418 U.S. at 688, 700. Micron's

analysis of the potential impact of the partnership between UMC and Jinhua, or the two

companies' entrance into the DRAM market, has no bearing on whether Trade Secrets 1-8 qualify

for protection under federal law, or whether Jinhua participated in a scheme to misappropriate

them. The same is true for any effort Micron made to convince UMC and Jinhua that Jinhua

should license DRAM technology from Micron. If anything, these requests appear related to

Micron's damages, which will not be at issue in the criminal trial until the time of sentencing.

Requests 21-22 also do not seek admissible evidence. To the extent Jinhua wants to use

them for the truth of the matter asserted, they appear to sweep in hearsay not subject to the

business records exception. *See* Fed. R. Evid. 801.

Finally, Requests 21-22 do not identify specific documents for production. Jinhua again

appears to interested in testing potential theories for its defense—this time related to Micron's

possible concerns about the competitive impact of UMC and Jinhua entering the DRAM

market—by combing through Micron's documents. But again, this directly contravenes the

purpose of a Rule 17(c) subpoena, and courts do not permit it. *See Reyes*, 239 F.R.D. at 606. ("A

specific theory of defense, however, is not the same thing as a request for specific information.

Rule 17(c) demands the latter, and [defendant's] subpoena provides only the former."). Rule

17(c) does not allow a criminal defendant to issue a subpoena "merely seeking [documents] in the

event they do exist." *See Johnson*, 2008 WL 62281, at *1, *4 (rejecting application of criminal

defendant—accused of felony battery—for Rule 17(c) subpoenas seeking records regarding

1   complaints against the arresting officers and medical treatment of the alleged battery victim,

2   reasoning that a request for documents "on the possibility that the events may not have happened

3   as described by the officers or the purported victim . . . is not specific enough to warrant the

4   issuing of Rule 17(c) subpoenas"). A request for documents based only on the speculative

5   possibility of their existence "is not merely an improper fishing expedition," it is "a net cast

6   blindly from an ocean troller in the mere hope of dredging some speculative treasure from the

7   bottom of the sea." *Id.*

8         **5.    Micron's "Final List" of Development Tools (Request 15)**

9        **Request 15** seeks "Documents reflecting the final list of the development and production

10   tools, equipment and machines used to design and manufacture Micron's 25nm DRAM devices."

11   (Stephens Decl., Ex. A at 20.) As with Jinhua's earlier document demands, this request is

12   irrelevant: whether or not Micron made changes to its 25nm DRAM production tools *after* Jinhua

13   stole Micron's trade secrets in no way absolves Jinhua of the theft. Interim versions of Micron's

14   tool list are entitled to trade secret protection. Jinhua is not accused of misappropriating Micron's

15   "final list"; it is accused of misappropriating eight specific trade secrets and only documents

16   related to those trade secrets are relevant.

17        Moreover, even if Request 15 sought relevant information—such as if one or more of the

18   alleged trade secrets in the Indictment includes or is included in the tool lists—the request would

19   still be impermissible because Jinhua already has this information in its possession or can obtain

20   the information from the government. Broad protections and procedures already exist for

21   criminal defendants to obtain such materials through Rule 16, the government's *Brady/Giglio*[8]

22   obligations, and the Jencks Act (18 U.S.C. § 3500). Documents that can be obtained from the

23   prosecution are procurable in advance of trial, and therefore cannot be obtained by a Rule 17(c)

24   subpoena. *See United States v. Beckford*, 964 F. Supp. 1010, 1031–32 (E.D. Va. 1997).

25         **6.    Communications with U.S. and Taiwan Governments (Requests 18-19)**

26        Requests 18-19 demand documents "reflecting communications between Micron and the

27

28       [8] *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

MICRON TECHNOLOGY, INC.'S MOTION TO QUASH

1   United States Government or the Taiwanese Government" related to Micron's request that the

2   government criminally prosecute Jinhua, and the allegations in Jinhua's criminal indictment.

3       **Request 18:** "Documents reflecting communications between Micron and the United States
        Government or the Taiwanese Government relating to the allegations in the indictment that
4       Jinhua conspired with UMC and the individual defendants to knowingly misappropriate,
        copy and/or receive or possess Micron's alleged trade secrets." (Stephens Decl., Ex. A at
5       20.)

6       **Request 19:** "Documents reflecting communications between Micron and the United States
        Government or the Taiwanese Government relating to Micron's request to the government
7       to criminally prosecute UMC and Jinhua." (*Id.*)

8       Jinhua can obtain Micron's communications with the United States government from the

9   prosecution.  In other words, this information is "otherwise procurable reasonably in advance of

10   trial by exercise of due diligence." *Nixon*, 418 U.S. at 699.

11       And while Requests 18-19 also purport to seek Micron's communications with the

12   Taiwanese Government, Taiwan is not a party to this action, and the communications have no

13   relevance to this case.  Jinhua should not be permitted to use a Rule 17(c) subpoena to circumvent

14   possible restrictions on the availability of these communications from Taiwanese authorities.

15           **7.   Micron's DRAM Plans in China (Request 20)**

16       **Request 20** calls for "Documents reflecting Micron's plans to manufacture and/or sell

17   Micron's DRAM products in China during the Relevant Time Period." (Stephens Decl., Ex. A at

18   20.)

19       As a threshold matter, the request fails for the same reason as Requests 10-12, 16-17, and

20   21-22: it seeks material that is not relevant, admissible, or specific. *See Nixon*, 418 U.S. at 699–

21   700.  Micron's plans to sell DRAM in China have nothing to do with the questions at issue in this

22   criminal action: did Jinhua conspire with UMC and the individual co-conspirators to

23   misappropriate Micron trade secrets?  To the extent the documents would be submitted to prove

24   the truth of any statements they contain, they represent inadmissible hearsay.  And the documents

25   sought comprise a broad category—not specific documents reasonably believed to be in Micron's

26   possession.

27       Of equal importance, information summarizing Micron's business plans is contained in its

28   publicly-available SEC filings, which anyone with access to the internet may access.  Such

1  requests are therefore not a proper subject for a subpoena. *See Collins*, 2013 WL 1089908, at *4,

2  *5 (citing *Nixon*, 418 U.S. at 699) (quashing request for victim eBay's press releases regarding

3  denial of service attacks, explaining that "[t]hese documents are publicly available and thus

4  plainly not proper subjects of a subpoena request.").

5          **8.   Micron's Trade Secret and Patent Analyses (Requests 9 and 13)**

6          Both Request 9 and Request 13 purport to require production of documents reflecting

7  investigation and analysis of legal questions: whether Micron's trade secrets are "legitimate" and

8  "protectable," and whether UMC and Jinhua's jointly-filed patents were "similar to, derived from,

9  or based on alleged Trade Secret 2 and/or Trade Secret 6."

10      **Request 9:** "Documents reflecting any investigation or analysis regarding whether alleged
   Trade Secrets 1-8 constitute legitimate, protectable trade secrets." (Stephens Decl., Ex. A
11  at 19.)

12      **Request 13:** "Documents reflecting any Micron investigations or analyses into the five
   patents and one patent application identified in the Indictment at Paragraphs 32 and 45 that
13  UMC and Jinhua jointly filed in the U.S. Patent and Trademark Office from approximately
   September 2016 through March 2017, including any analysis demonstrating whether
14  Micron believed the patents and patent application were similar to, derived from, or based
   on alleged Trade Secret 2 and/or Trade Secret 6." (*Id.*)
15

16          Requests 9 and 13 should be quashed for the same reasons discussed previously. The

17  documents sought are not relevant: legal advice from Micron's attorneys regarding protectability

18  of Micron's trade secrets, and whether Jinhua's patents reflect their misappropriation, "would not

19  be relevant evidence—that determination is for a jury of [defendant's] peers to make." *Reyes*,

20  239 F.R.D. at 600 (quashing subpoena request seeking "an attorney's formal opinion about

21  whether any crimes were committed"). Nor would the conclusions of any such analysis be

22  admissible for the truth of the matter asserted: "[T]he second-hand reflections, findings, and

23  conclusions of investigating attorneys" are hearsay. *Id.*

24          Yet even apart from these threshold defects, Requests 9 and 13 should be quashed because

25  they seek documents protected by attorney-client privilege and work-product doctrine. *See*

26  *Reyes*, 239 F.R.D. at 598 (quoting WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 275;

27  *Tomison*, 969 F. Supp. at 597–98) ("[A] Rule 17(c) subpoena should be quashed or modified if it

28  calls for privileged matter.") (internal quotation marks omitted).

1    These requests would encompass confidential communications between Micron and its

2    attorneys made for the purpose of seeking legal advice regarding whether Trade Secrets 1-8

3    qualify as trade secrets, and whether Jinhua's patent filings demonstrate misappropriation—in

4    other words, information protected by attorney-client privilege. *See Upjohn Co.*, 449 U.S. at 390

5    (attorney-client privilege applies in the context of an investigation conducted by a company's

6    attorneys).  They also would encompass protected attorney work product: "written statements,

7    private memoranda and personal recollections prepared or formed by an adverse party's counsel

8    in the course of his legal duties." *Hickman*, 329 U.S. at 510.

9    Jinhua has no basis to demand production of documents falling in either category.

10   Rule 17(c) was not "designed to eliminate the burdens of the adversarial process." *Reyes*, 239

11   F.R.D. at 600 (citing *Hickman*, 329 U.S. at 516 (Jackson, J., concurring)).  "Not even the most

12   liberal of discovery theories can justify unwarranted inquiries into the files and the mental

13   impressions of an attorney." *Hickman*, 329 U.S. at 510.

14   ### 9.    Micron's Analysis of the Value of Its Trade Secrets (Request 14)

15   Finally, **Request 14** seeks "Documents reflecting any Micron analysis of the economic

16   value of Alleged Trade Secrets 1-8." (Stephens Decl., Ex. A at 19.)  This request should be

17   quashed because it seeks information that is not relevant or admissible, and which is protected by

18   attorney-client privilege and the work-product doctrine.

19   First, because quantification of the value of a trade secret is not an element of the offense

20   with which Jinhua has been charged, *see* 18 U.S.C. § 1839(3) (defining a trade secret as

21   information that derives independent economic value from not being generally known), this

22   information would be relevant only for Jinhua's sentencing and therefore should be quashed. *See*

23   U.S.S.G. § 2B1.1.

24   Second, the requested documents are inadmissible hearsay. *See Collins*, 2013 WL

25   1089908, at *4 (quoting *Reyes*, 239 F.R.D. at 600) (reasoning that "any one-time financial

26   evaluation of the loss or damage caused by what this unusual and perhaps unprecedented event at

27   eBay 'lack[s] the hallmarks of reliability that justify the admission of run-of-the-mill business

28   records'").

1          Finally, to the extent this request extends to documents protected by attorney-client

2   privilege and the work product doctrine, such materials are not properly the subject of a

3   Rule 17(c) subpoena. *Reyes*, 239 F.R.D. at 598.

4   **V.      CONCLUSION**

5          A Subpoena served under Rule 17(c) must request specific, relevant, admissible, non-

6   privileged material not otherwise obtainable reasonably in advance of trial through due diligence.

7   Jinhua's subpoena fails this test, instead targeting discovery for other pending litigation between

8   the parties.  Micron therefore respectfully requests that the Court modify Requests 1-5 and 7, and

9   quash Requests 6 and 8-22.

10

11   Dated: June 21, 2021                    Respectfully submitted,

12                                          JONES DAY

13

14                                        By: *s/ Neal J. Stephens*

15                                           Neal J. Stephens

16                                        Counsel for Victim
                                     MICRON TECHNOLOGY, INC.

17

18

19

20

21

22

23

24

25

26

27

28

RECEIVED

2021 JUN 21  P 5: 03

SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF C.A.