Pages 1 - 41

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | **NO. C 18-00465 MMC** |
| | ) | |
| FUJIAN JINHUA INTEGRATED | ) | |
| CIRCUIT COMPANY, LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

San Francisco, California
Wednesday, June 23, 2021

**TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff:
                    Stephanie M. Hinds
                    Acting United States Attorney
                    450 Golden Gate Avenue - 11th Floor
                    San Francisco, California  94102
            BY:  **LAURA VARTAIN, ATTORNEY AT LAW**
                    **NICHOLAS HUNTER, ATTORNEY AT LAW**

For Defendant:
                    SKADDEN, ARPS, SLATE, MEAGHER
                    & FLOM LLP
                    525 University Avenue - Suite 1100
                    Palo Alto, California  94301
            BY:  **JACK P. DICANIO, ATTORNEY AT LAW**
                    **MATTHEW E. SLOAN, ATTORNEY AT LAW**

Reported By:        Marla F. Knox, RPR, CRR, RMR
                    Official Reporter

<u>**Wednesday - June 23, 2021**</u>                                    <u>**2:17 p.m.**</u>

<u>**P R O C E E D I N G S**</u>

---o0o---

**THE CLERK:**  Calling criminal case number 18-465,
United States of America versus Fujian Jinhua Integrated
Circuit.

Will Counsel please state your appearances for the record
starting with Government Counsel.

**MS. VARTAIN:**  Good afternoon, Your Honor, Laura
Vartain and Nick Hunter for the United States.

**THE COURT:**  Thank you.  Good afternoon.

**MR. DiCANIO:**  Good afternoon, Your Honor, Jack DiCanio
and Matt Sloan on behalf of Defendant, Jinhua.

**THE COURT:**  Okay.  Very good.  All right.

Here you are again.  And the subject that I have
designated in the past -- although it has been some time and
quiescent in that regard -- I'm, by the way, trying my best to
keep cranking out orders on all of these motions that have been
filed in the case.

You will be getting another one shortly.  And I'm not
quite sure what to do with your twenty-some motions to seal,
but that will come up at some point -- wait a minute.

Oh, I'm sorry.  I'm on the wrong case.

Forget it.  Okay.

**MR. DiCANIO:**  You should have seen the look of fright

1   in my eyes.

2        **THE COURT:**  I tell you I have been absolutely going

3   crazy on this other case, which will remain unnamed.

4        Yours is only crazy in the sense that I'm back on trying

5   to figure out what to do with this particular issue, which I

6   did visit before.

7        I have -- to be honest, I have sort of a suspicion that

8   the Government might not have a lot more to give you, and so I

9   want to find a few things out from them.

10        From the beginning -- and, you know, we can go back to

11   Christine Wong when she was appearing on behalf of the

12   Defendants -- and she had established at that time somewhat of

13   a leitmotif of where is the evidence against my client and

14   nobody is giving anything to us.

15        And then I would ask the Government and they didn't have

16   anything more than they have already given.  And I don't know

17   if we are still in that particular mode or not.

18        So just to go over a couple of things with you, first of

19   all, I just tried to put a timeline together.

20        The indictment in this case jumps all around.  It isn't

21   even starting with, like, the newest date and working backwards

22   or whatever.

23        It is starting with one date, and then it goes to another

24   date.  And as I understand it, this is the way it runs.  And I

25   just kind of do these highlights for a minute.

1          Okay.  In July of '15 Stephen Chen left MMT for UMC.

2          In October of that year J.T. Ho was recruited by Chen from

3     MMT.

4          In January of '16, UMC and Jinhua enter some kind of

5     technological cooperation agreement.

6          In February of that year Jinhua's, quote-unquote,

7     established, which is one of the things that the Defendants are

8     asking about here.

9          How did they get formed after they were so-called, you

10    know, entering a contract or already conspiring?

11         Then you have April of '16, Kenny Wong leaves MMT for UMC.

12         And then in February of '17, now Mr. Chen becomes the

13    president of Jinhua in charge of DRAM production.

14         So we have just sort of a timeline of highlights.  And

15    then the conspiracies are alleged to have started in January of

16    '16, which corresponds, I guess, in terms at least to the month

17    and year with the tech agreement.

18         And then it just runs to the time of the indictment which

19    was September of '18.  That is the first conspiracy to commit

20    economic espionage.

21         And then in the second count against Jinhua, conspiracy to

22    commit theft of trade secrets, that runs from October of 2015

23    to the date of the indictment.

24         And so what happened in October was that Mr. Ho left, you

25    know, Micron, essentially, and went over to UMC.

1        So those, I guess, match up to a certain extent.

2        And then we have the non-conspiracy count.  It's in Count

3   Seven, economic espionage discharged as a straightforward

4   crime.  And that's in February of 2016.

5        Now, that's when Jinhua was, quote-unquote, established,

6   according to the indictment.

7        So I though I would just ask -- are you going to do most

8   of this, Ms. Vartain or who is going to be responding primarily

9   or are you jumping around?

10       **MS. VARTAIN:**  Your Honor, I think I will primarily

11  respond.

12       **THE COURT:**  Okay.  Great.  Thank you.

13       All right.  So let me ask you:  One of the things the

14  Defendant brings up right away is:  Gee, we weren't even formed

15  until February of 2016.  How can we be conspiring before that

16  or even enter an agreement as Jinhua before that?

17       And I was wondering what your thoughts were on that

18  particular idea?

19       **MS. VARTAIN:**  Sure, Your Honor.  Let me take that --

20  answer that in two pieces.  One as it concerns timing, when.

21  And two, as it concerns the who.

22       As a matter of timing -- because as the Court notes the

23  conspiracy runs through the point of the indictment, which was

24  September of 2018 -- it is perfectly adequate for Jinhua to

25  join later in the conspiracy than other members of the

1  conspiracy.

2      The Ninth Circuit jury instruction on conspiracy

3  recognizes this consistent with *Pinkerton*.

4      And it's that a co-conspirator becomes liable for the acts

5  of its other co-conspirators when it knowingly joins the

6  conspiracy.  So --

7          **THE COURT:**  Okay.  All right.  Just to sum that up

8  quickly then, your response to the -- at least sort of implied

9  argument that this doesn't quite work out as a timing matter is

10  that the conspiracy can start before a particular conspirator

11  is alleged to have become a member and join the conspiracy.

12      All right.  With that in mind, then the question that the

13  Defendant asked is:  When did we join?

14      Are you willing to tell them that?

15          **MS. VARTAIN:**  Your Honor, what I would like to say --

16  if I can finish the question of the "who" is relevant to the

17  "when" as well.

18      The indictment pleads many facts, which the Court has

19  highlighted some of them, as it concerns the named Defendants,

20  J.T. Ho and Stephen Chen.

21      Both of those persons -- natural persons became employees

22  of Jinhua.

23      The dates of those -- the dates of their employment --

24  well, Stephen Chen became, according to the indictment, in

25  February of 2017.

1          The Defendant is, of course, in the best position to know

2     when they were under the terms of their employment.

3          I believe what the indictment -- well, I'm certain what

4     the indictment alleges is that Stephen Chen was acting on

5     behalf of Jinhua earlier than February of 2017; in fact,

6     including when he represented UMC and Jinhua in the Northern

7     District of California at a recruiting event and also when he

8     took Jinhua directors and employees to visit equipment

9     manufacturers.

10         Now, that's an important point, Your Honor --

11         **THE COURT:**  This is going way beyond my question,

12    which didn't even have a "who."  Okay.

13         My question was simply the idea of somebody saying:  How

14    can we have joined a conspiracy before we existed.

15         And your answer was:  You don't have to be in existence in

16    the start as long as you were in existence at some point during

17    the course of that, which was really my only question as well

18    as the question of how were they established after they entered

19    a technology agreement.

20         Are you saying that that was an agreement to form Jinhua

21    and then to cooperate with this technology or are you saying

22    Jinhua actually existed before they were established?

23         **MS. VARTAIN:**  Jinhua came into existence and then

24    entered -- as the Government understands it, and then entered

25    into the technology agreement with UMC.

1          **THE COURT:**  Okay.  Well, then your indictment is

2      backwards, which is one of the reasons I'm trying to clear up

3      the ambiguities.

4          The way you have got it is:  January 16 they entered the

5      agreement, and in February they are established.

6          **MS. VARTAIN:**  Your Honor, I think the facts as we have

7      been able to establish them over the course of this case -- and

8      I think this is an important point -- Jinhua is the Defendant

9      who possesses its own information as to when it came into

10     existence.

11         **THE COURT:**  I'm sorry.  I don't want to hear argument

12     at this time.

13         I'm just trying to clarify what you are trying to say in

14     the indictment.  Okay.

15         And as I understand it, right now you say it didn't

16     essentially exist until a month after it entered into some

17     agreement.

18         So to kind of give you the benefit of the doubt, so to

19     speak, I was wondering whether you were suggesting that the

20     agreement was in some way anticipatory of somebody actually

21     forming.

22         But maybe I can ask this:  Is this a written agreement?

23         **MS. VARTAIN:**  The agreement between Jinhua and UMC is

24     a written agreement.

25         **THE COURT:**  All right.  And is it signed by -- you

1  have got it; right?  And you gave it to the Defendant?

2          **MS. VARTAIN:**  Correct.

3          **THE COURT:**  All right.  And assumedly they had it

4  anyway.

5          **MS. VARTAIN:**  Assumedly.

6          **THE COURT:**  Okay.  And that agreement is signed by

7  someone on behalf of Jinhua?

8          **MS. VARTAIN:**  I haven't looked at it in recent days,

9  Your Honor; but I believe it is signed by both the parties.

10     I will allow my co-Counsel to correct me if he has a

11  different memory.

12          **THE COURT:**  Well, he is shaking his head.

13  Mr. DiCanio, you have got a copy of the agreement?

14          **MR. DiCANIO:**  We do, Your Honor.

15          **THE COURT:**  All right.  Somebody purported to sign on

16  behalf of an existing Jinhua back in January?

17          **MR. DiCANIO:**  Your Honor, I don't know if I have the

18  recollection of the exact date.  Maybe Mr. Sloan can help me,

19  Your Honor, because it has been a while since I looked at it

20  myself.

21          **THE COURT:**  Okay.  Because it just may be that the

22  indictment just doesn't really track accurately that particular

23  fact.  But if it is one that is really not going to be in

24  significant dispute, it may not matter.

25     I don't know, Mr. Sloan, you got anything to add to that

1  or not?

2      **MR. SLOAN:**  Your Honor, I was actually just looking

3  for a copy of that.  I believe the date was January of 2016,

4  but I don't recall.

5      **THE COURT:**  All right.  Well, let's just say that it

6  looks like Jinhua was in effect at the time that they actually

7  signed the agreement as opposed to some agreement to form

8  something and then to cooperate in some way.

9      Okay.  As far as when they entered the conspiracy, the

10 Government doesn't want to be pinned down in a bill of

11 particulars because they are not sure, insofar as I can tell,

12 exactly what happened when.

13     So they are just relying on various circumstances.  At a

14 minimum they seem to be saying that no later than at least when

15 they got into this tech agreement.

16     Is that pretty much what the Government is saying or not?

17     **MS. VARTAIN:**  Your Honor, it is correct that when

18 UM -- when Jinhua entered the technology agreement, that would

19 be a point in time where they could have entered the

20 conspiracy.

21     **THE COURT:**  Yeah.  See, and they don't know who it was

22 unless you want to say whoever signed is, you know, the person

23 acting for Jinhua.

24     The problem here is they don't have an insider.  Many

25 times when the Government has a conspiracy that they are

1    charging -- often in RICO cases where they are, you know,

2    trying to make a state case into a federal case -- they have

3    people that they -- are cooperating, who were either in the

4    gang or what have you; and they say how it works and everything

5    and what people do and did.

6         And they don't have anybody here.  And what I question is

7    they had a deal with UMC.  And UMC was supposed to be

8    cooperating.

9         And according to Jinhua, the day that the plea went down,

10   they go out and give a press conference and it essentially

11   exonerates Jinhua.

12        Did that actually happen; that they went out and said

13   Jinhua didn't have anything to do with any of this and didn't

14   know what was going on?

15        **MR. DiCANIO:**  Your Honor, if that's directed to me,

16   I'm happy to answer that.

17        **THE COURT:**  Anybody.

18        **MR. DiCANIO:**  Okay, yeah.  So, Your Honor, it wasn't a

19   press conference as far as I know.  It was a press release.

20        **THE COURT:**  Oh, okay.

21        **MR. DiCANIO:**  And what they said was two things.

22        One, they didn't plead to the conspiracy count.  What they

23   said was the first time any of UMC management became aware of

24   the possession of this information from the ex-Micron employees

25   was as a result of the Taiwanese raids of Micron's offices in

1    Taiwan.

2         They also said that when we learned of this, we went

3    through the technology transfer information that we were

4    preparing; and we stripped out any information that could have

5    been influenced by Micron information so that when we

6    transferred it to Jinhua, it did not contain any of the Micron

7    information.

8              THE COURT:  That's all in the papers.

9              MR. DiCANIO:  Yes.

10             THE COURT:  Actually, I was just trying to confirm it

11   with Ms. Vartain.

12             MR. DiCANIO:  Oh, sorry, Your Honor.  I thought maybe

13   that was directed to me.

14             THE COURT:  Oh, no.  I mean, once you started talking,

15   I thought you might say something new but actually you didn't.

16             MR. DiCANIO:  Sorry.

17             THE COURT:  Ms. Vartain, as far as you know, was there

18   a press release where UMC essentially said that they didn't

19   transfer anything to -- of course, you know, you could have had

20   a conspiracy and not followed through on it, I guess, but then

21   who would care?

22             MS. VARTAIN:  Your Honor, I didn't read the press

23   release.  What I focused on was UMC's admissions in paragraph 2

24   of the plea agreement, which I think establish a conspiracy,

25   notwithstanding the fact that they did not plead to a

 1   conspiracy.

 2        **THE COURT:**  Well, let's see.  I've got the plea

 3   agreement.  Give me a second.  Paragraph 2, of course, they had

 4   a lot of -- well, you cited to it in your opposition.  There

 5   are points there.

 6        But let's see.  Where do you think that they are conceding

 7   a conspiracy with Jinhua and not, for example, with anybody who

 8   had yet not joined them?

 9        **MS. VARTAIN:**  Yeah.  So, Your Honor, this is why I

10   think it is important to talk about the "who."

11        I think Jinhua -- Stephen Chen is Jinhua, and there are

12   many facts in here about --

13        **THE COURT:**  I don't want to hear your argument again.

14        I understand -- look, your whole point is going to be the

15   following as far as I can tell:  If they did transfer trade

16   secrets to Jinhua, Jinhua knew because they hired Chen; right?

17        He was there.  He is Jinhua.  He knows what is stolen and

18   what isn't.  And if any of that stolen stuff ended up being

19   transferred to Jinhua, then Jinhua knew even if nobody else at

20   Jinhua knew.

21        They hired him at their peril, okay.  I understand that.

22   That is a pretty straightforward, easy-to-understand argument.

23        But what I was just asking you -- apropos of your

24   statement that they conceded a conspiracy even though they

25   denied a conspiracy or at least didn't admit to one -- where in

1    the many paragraphs you thought that was.

2         **MS. VARTAIN:**  Yes.  Your Honor, the paragraphs that

3    refer to evidence of Chen's knowledge, I think, are what I'm

4    driving at which --

5         **THE COURT:**  Oh, okay.  You are just saying that if

6    Chen knew, Jinhua knew; right?

7         **MS. VARTAIN:**  Yes.

8         **THE COURT:**  Okay, fine.  But I think that -- they

9    also -- apparently UMC is denying that they transferred any of

10   the assertedly stolen trade secrets for a variety of reasons.

11   They didn't transfer it to Jinhua.

12       At one point, I gather, they said they were more

13   interested in the Samsung technology, which I hope they didn't

14   get by hiring people from Samsung.

15       But, anyway -- and maybe they just gave up on the Micron

16   stuff.  It just didn't sound like they were very cooperative is

17   all I'm saying and -- all right.

18       So getting back to this bill of particulars, first, I was

19   just trying to clarify things.  I'm not necessarily ordering

20   the Government to do anything at the moment.

21       First of all, maybe I will go back for a moment -- just to

22   backtrack a little bit -- on the question of what are the trade

23   secrets.

24       Because the Defendant is concerned that there is some

25   voluminous material that they got, and they really don't want

1  to keep spending time paying an expert to go through it if it

2  is not going to be something offered by the Government as a

3  trade secret.

4       And one of those things is this TTP, the Technology

5  Transfer Package.  Apparently UMC sent it to Jinhua in

6  September of 2018, according to what I understand the idea is

7  here.

8       And that it contains some DRAM design for a particular

9  device.  And it's got 148,000 pages.

10      So the Defendant said:  We have been looking at it.  In

11  fact, their expert would say whatever he looked at wasn't a

12  trade secret.  That can be disputed.

13      You know, they have got somebody who wants to say that;

14  but they don't want to keep looking at it.

15      Are you willing to say whether that is going to be

16  something that one of your experts or whoever you are calling

17  as an expert on this, would someone say that's contains trade

18  secrets?

19           **MS. VARTAIN:**  Yeah.

20           **THE COURT:**  Okay.  And is that expert going to

21  identify where in the 148,000 pages those secrets can be found?

22           **MS. VARTAIN:**  The expert disclosures are due in a

23  week, and they will include that information, Your Honor.

24           **THE COURT:**  Okay.  Here is my thought on this,

25  Mr. DiCanio, by the time we are actually hearing all of this,

1    we are at the 23rd.

2        In a week -- if I ordered anybody to give you more

3    disclosure on the trade secrets, I would give them a week at

4    least to do it.

5        A couple of days after that is July 2.  You are going to

6    get these expert reports.  My feeling on that is that we wait

7    for the expert reports.

8        Now, if you get those and you look at them and you say:

9    This is not adequate; either because one, they just don't meet

10   the statute -- which happened in one of the cases recently that

11   the U.S. Attorney was involved in where the experts stated the

12   subject they were going to testify to but not their opinion

13   within the subject -- so as long as we have got -- those were

14   not retained experts.

15       Here, we have retained experts.  If you think their

16   reports are still too general to give you reasonable notice of

17   what you have to focus on here, then you can come back to me I

18   think is the best I can say on this.

19       I have real concerns, by the way, as to when this case

20   will be tried.

21       We are still operating under a sort of tiered system of

22   priority for the courtrooms that are available for trials, but

23   very shortly the various trial courts will be open.

24       Because they have been having trouble getting jurors

25   during COVID, they aren't -- they are asking that we not -- not

1    have any trials in our own courtroom until a while down the

2    road.

3          And right now I know that there is a move by some of our

4    court to try and advance when that might be.

5          So I'm hoping that we will have -- I have got a courtroom.

6    I can accommodate you if somebody just let's me let you in

7    there, and we can get the Jury Office to get us a panel.

8          So we still have time, I guess, is what I'm saying.  And

9    I'm hoping that we can get that sorted out.

10         I know there is a compilation theory, and that part of the

11   opinion might be:  It isn't just one little factor, another

12   little fact but how they are put together; but they may have to

13   describe what they mean by that beyond just saying it.  And so

14   we can see how that plays out.

15         I don't purport to be an expert in this technology, so

16   it's going to be -- if I can understand it, anyone can

17   understand.

18         If I can't understand it, it didn't necessarily mean that

19   it isn't good enough.  So we will see where that goes.

20             **MR. DiCANIO:**  Your Honor, may I make just one quick

21   comment?

22             **THE COURT:**  Sure.

23             **MR. DiCANIO:**  So, Your Honor, I certainly understand

24   your perspective of waiting for the expert reports that come

25   out very, very shortly.

1      I am a little bit concerned in all honesty, Your Honor,

2   because the time has really been slipping; and this requires an

3   awful lot of expert work to deal with these trade secret

4   issues.

5      And, you know, if the Government was inclined to have

6   identified well what are the specific trade secrets, whether

7   that is within trade secrets 1 to 8 or in the compilation, they

8   really should have been telling us this.  We have been asking

9   for this for a really, really long time.

10      And knowing how these cases are typically tried, they have

11   been working with their expert, probably working with Micron

12   people, for some time to have a very, very good sense of that.

13      And so I'm really concerned, Judge, that we will be

14   disappointed when we get those reports.

15      And I'm certainly happy to follow the Court's instruction

16   here, but I am concerned that this has been trailing.  And I

17   don't want to burden you again with another motion, but -- I

18   hear what you are saying.

19      **THE COURT:**  You know, if necessary because I think

20   that the better practice is to wait for the experts to just

21   give those reports.

22      If I gave them a week, they would get the expert report

23   and give it to you two days earlier, you know.

24      **MR. DiCANIO:**  Okay.

25      **THE COURT:**  It won't make any difference.

1          **MR. DiCANIO:**  I understand your perspective.

2          **THE COURT:**  I will say this:  If you get -- if this is

3     not good enough and we need to deal with it at greater length

4     and things are getting closer to the trial and if you need an

5     extension, whatever it is, I will also entertain any such

6     motion because I think that you have to have -- you have to

7     know what is going on here in terms of what somebody is saying

8     is a trade secret.

9          And Micron, who has been very involved in this case from

10    the get-go, ought to have been able to identify that right

11    away.

12         In other words, I can understand where they say:  Oh my

13    God, this guy took a whole file.  What is in it?

14         All right.  Now, they get their tech person to look at it,

15    and the tech person says:  You don't have to worry or this is

16    important.

17         And, you know, I'm not saying the president can figure it

18    out.  But, you know, they have people there.

19         And they have known about this for a long time, years.  So

20    they should be able to do a halfway decent job in explaining

21    it.

22         **MR. DiCANIO:**  Thank you, Your Honor.  That's very

23    helpful.

24         **THE COURT:**  Okay.  And I will tell you now, if the

25    idea and the fear the Government has as to a bill of

1  particulars is it's going to box them in, if that is the

2  understanding that once you have answered a bill of particulars

3  in a particular way, you are kind of stuck with that answer and

4  can't prove around it, then in order to avoid that, they are

5  going to have to voluntarily give you things that -- that, you

6  know, qualify here.

7       Otherwise, they may be stuck with something that actually

8  limits them.

9       Now, if I said to them, for example, here is one -- give

10 me a second on that.

11                         (Pause in proceedings.)

12          **THE COURT:**  Just a second.

13                         (Pause in proceedings.)

14          **THE COURT:**  One minute.

15                         (Pause in proceedings.)

16          **THE COURT:**  Yes, all right.  If I said:  All right.  I

17 am directing you to answer a bill of particulars as to when

18 this conspiracy was formed and where and how; and in their

19 responsive papers to this motion, they say they don't know the

20 time and place the conspiracy was formed.  That's their

21 statement in their actual response.

22      So that if they were ordered to give you details, it's not

23 clear that they are going to be able to do it.

24      And then I'm not sure what the answer to that is because

25 maybe you would say if you don't know that, you can't really

1   prove up the case.  And then there isn't a vehicle to try to

2   get to that in advance.  So, the case may have to be tried to

3   see what they can show.

4        All right.  This TTP transfer in September, is this

5   something that UMC has ever commented upon in their plea

6   agreement or otherwise?  No?

7              **MR. DiCANIO:**  Your Honor --

8              **MS. VARTAIN:**  Your Honor --

9              **MR. DiCANIO:**  -- in the press release what they said

10  is when they transferred the technology package to Jinhua, they

11  made sure that before they did that, they stripped all of

12  potentially Micron information or anything that could have been

13  influenced by Micron information so that whatever was delivered

14  was clean.

15             **THE COURT:**  Okay.  So their statement about what we

16  transferred was cleaned up covers that TTP.

17             **MR. DiCANIO:**  That's what they said in their press

18  release.

19             **THE COURT:**  Okay.  You know, whether they would say

20  differently otherwise, I don't know.

21        And who said it and whether somebody will come in and say:

22  This guy was uninformed.  I don't know.  They weren't under

23  oath.  They weren't a 30(b)(6) witness, so --

24             **MR. DiCANIO:**  I would just say this, Your Honor:  A

25  statement like that following a plea is going to come from

 1   someone pretty well informed from UMC, I would imagine.

 2        **THE COURT:**  I don't know.  We don't have to go into

 3   the merits.  I just keep thinking about Casablanca.  Why did

 4   you come here?  I came here for the waters.  What waters?

 5   There are no waters.

 6                         (Laughter)

 7        **THE COURT:**  So.  Anyway, leaving that.

 8     So then we have -- here we have the things the Defendant

 9   wants.  The nature -- describing the nature of the charge --

10   well, that's the function, so let me go to their details.

11        Well, I will do the function.  The Defendant has to have

12   enough detail to be able to prepare for trial.  You don't want

13   to surprise everybody.

14        And there is no claim of double jeopardy here, so we don't

15   have to worry about that part of it.  So then if I go to the --

16   hang on.  Where is it?  Sorry.

17                   (Pause in proceedings.)

18        **THE COURT:**  Okay.  So there is a long list.  We have

19   talked about identifying the trade secrets.  I thought that was

20   sort of the easier part because of the idea of the expert

21   disclosures coming up.

22        **MS. VARTAIN:**  Your Honor, before we leave the trade

23   secrets, if -- I'm hesitant because I don't want to argue, but

24   I do want to be very clear about the Government's position on

25   this, which has been consistent from the indictment to our

1   response, is that the entire document -- that is trade secret

2   2, 3, 4, 5, 6, 7 and 8 -- will meet the definition of a trade

3   secret.

4        Meaning that the entire document is secret; that Micron

5   took reasonable measures to keep it secret, and it had value

6   because it was secret.

7        And I'm not aware of any law that requires us to parse it

8   into portions in any way.

9        And we don't intend to do that.  We intend to tell the

10  jury the entire document is a trade secret.

11           THE COURT:  All right.  If then your position is it's

12  the entirety, Mr. DiCanio says:  Well, then if we didn't get

13  the whole document, then we did not have any problem with

14  taking your trade secret because you have to have the whole

15  document to have a trade secret.  Is that your position?

16           MR. DiCANIO:  Your Honor, I would say --

17           MS. VARTAIN:  Your Honor --

18           MR. DiCANIO:  Is that for me?

19           THE COURT:  I know what you would say.  I'm asking --

20           MR. DiCANIO:  Sorry, I'm over eager this afternoon.

21           THE COURT:  Are you saying, yes, if you don't have the

22  whole document, there is no misappropriation?

23           MS. VARTAIN:  No, Your Honor, because the conspiracy

24  was to take, to steal -- and then what the evidence will

25  show -- to alter the trade secrets for the benefit of Jinhua.

        **THE COURT:**  Okay.  So not that you didn't get it.

    You are saying that as long as you agreed to steal the
whole document, which they didn't exist at the time of the
theft.

        **MS. VARTAIN:**  Which is why I think it is important to
focus on the actions of the named Defendants, two of whom
ultimately worked for Jinhua.

        **THE COURT:**  I don't think you can attribute Mr. Chen's
behavior before he joined Jinhua to Jinhua unless you can show
he acted as an agent for them in some way other than the fact
that he ultimately became an officer.

    If he were just a free agent beforehand, then, you know, I
don't think you can attribute the theft to them.  You could
attribute to them receipt of the trade --

        **MS. VARTAIN:**  And that is what they are charged with.

        **THE COURT:**  Excuse me.

        **MS. VARTAIN:**  Excuse me, Your Honor.

        **THE COURT:**  Yeah, you can attribute the transfer of
the information and knowledge of it if he was there at the
time.

    If he wasn't there when it was transferred and you have
this theory that oh, yeah, he was working for them from the
get-go, you are going to have to prove that.

    You have an uncontrovertible, if you will, piece of
evidence that he became the president with whatever was in his

1    head at the time.

2         Now, if he didn't do anything once he got over there,

3    that's one thing.

4         If you are going to rely on:  He had to have gotten trade

5    secrets to them because then they had these patent

6    applications, that is another way you might be trying to show

7    things.

8         And I understand that.  But going back to this, the

9    Defendant wants to know where and how Jinhua purportedly

10   joined.

11        And according to your papers, you don't know or you don't

12   want to say.  If it is just you don't want to say, that is not

13   good enough.

14        If you actually don't know, that might be something else;

15   and you are just relying at a minimum on these facts that can't

16   be contested.

17        So that may be that that's all that the Government is

18   going to be able to say is that they got these things.  He knew

19   they were stolen.  And then they applied for patents and that

20   just shows because they couldn't have applied for it if they

21   didn't have the secret sauce, you know.

22        So, I think that's their theory.  And that may be all that

23   they are going to be able to do.

24             MR. DiCANIO:  But, Your Honor, may I speak to that?

25             THE COURT:  Yeah.

1          **MR. DiCANIO:**  Thank you.

2      So I think you have really put your finger on the problem.

3  And the problem from our perspective is that the Government

4  doesn't have a clear position on when we joined the conspiracy.

5      Now, it is one thing if they say:  You joined the

6  conspiracy when Stephen Chen was hired by Jinhua, okay.

7      If that's what they are saying, then I understand that,

8  and we can prepare a defense that deals with that.

9      But they are not quite saying that.  What they are saying

10 is that there is this amorphous time where there is a lot of

11 interaction.

12     All of it is unremarkable and all of it is not wrongful

13 conduct; certainly not wrongful conduct for my client to enter

14 into a business contract with UMC.  He was a very

15 well-established player in the field.

16     Nor would there be anything wrong with going to recruiting

17 fairs or going to visit vendors.

18     So when you look at, like, what is exactly the wrongful

19 conduct that you allege that Jinhua did as opposed to these

20 other individuals, that's where we are at a loss.

21     Now, if the Government were to say:  We believe you

22 entered the conspiracy when you hired Stephen Chen, well, then

23 that helps us; right.

24     Then we know that everything before that -- conduct by

25 Stephen Chen before he became associated with Jinhua, anything

1  done by UMC before that time -- that can't be attributable to

2  us under the conspiracy law.

3       They haven't done that, Your Honor.  And I don't think it

4  is enough for them to say:  Well, we don't really know.  And so

5  because we don't really know, we will just have to see how this

6  plays out at trial.

7       When they bring the case, they need to have probable cause

8  to believe that a conspiracy was entered into and have some

9  understanding of when they believe that point in time occurred.

10 And so that's really all we are asking for is when.

11      **THE COURT:**  If you ask when, they are going to take it

12 back at a minimum to when the agreement occurred.  They are

13 going to take it back beyond that, if they can.

14      And, frankly, that's just their theory.  They may never be

15 able to prove it.

16      They are relying on circumstances which your argument is

17 these circumstances are not good enough.  And ultimately if

18 they can't pad it up in a few ways, they may not be able to do

19 any more than what they are saying.

20      But what they are saying is that we think you -- see, you

21 don't even exist going back at least until January of '16 and

22 ultimately they said February.  But let's say January because

23 somebody is signing an agreement in January.

24      So let's say before that, you have Mr. Chen -- you know,

25 six months or so before -- he has jumped ship and gone to UMC.

1    All right.

2        You can say:  Hey, there is somebody there, whoever signed

3    this agreement, you knew Chen before.  You had put this into

4    play.  So, first, the whole idea would be Chen would leave.

5    And then he would just make it look fine, and then he would

6    bring these other people over.  And he wouldn't bring them all

7    at once, and nobody would notice right away.

8        You know, they can have some whole theory that they will

9    never be able to prove or it is going to be hard unless they

10   get somebody who is cooperating more than UMC is.

11       But at the moment, they want to be able to say it could

12   have happened anywhere earlier.  And I just think if that is

13   their theory -- because they say we don't exactly know -- they

14   know enough to say at a minimum we are starting with the

15   agreement because that's signed.

16       Somebody worked out something, and they wouldn't have

17   bothered to do it if they didn't have some goal; and that goal

18   had to be dishonest.  That is not necessarily true as to

19   Jinhua, but that is at least their starting point.

20       And if they can't prove it as to that point, they are

21   going to say:  As long as we can show, either directly or

22   circumstantially, that trade secrets ended up somehow at

23   Jinhua -- either in their mind or in their products -- that as

24   long as Chen was there at the time, he is Jinhua.  And they

25   knew.

1       And that's really -- that is their case.  I don't know if

2   it is going to play out.  But it sure sounds like that is what

3   they are trying to say.

4       And they don't want to limit to themselves because heaven

5   forbid they get the so-called proverbial fly on the wall and

6   can make it go back further, I don't see how it is going to

7   change the end result to bring it back farther to a point when

8   people were leaving.

9       Maybe it might help with the seventh cause of action in

10  some way, the direct one, not sure; but --

11          **MR. DiCANIO:**  Your Honor, may I respond?

12          **THE COURT:**  There is the question that Jinhua just

13  said:  You don't have any evidence, and we demand that you give

14  us your evidence.

15      They go we don't have it either.  Okay.  That's what this

16  case has been from the start.

17          **MR. DiCANIO:**  Your Honor, may I respond?

18          **THE COURT:**  Yeah, sure, you can but I don't think

19  there is anything else I can order them to do on that at the

20  moment.

21          **MR. DiCANIO:**  Understand, Your Honor, but maybe just

22  let me make a point for the record then.

23      You know, I think it is one thing before the indictment if

24  they are sitting around their conference room and they are

25  pontificating about what could have happened.  This kind of

1   discussion would have been totally appropriate.  It is what

2   prosecutors and regulators do all the time.

3       My God are we far way from that point in time.  They

4   indicted the case.  The Attorney General of the United States

5   does a press conference to announce it.

6       We are two-and-a-half years now down the road and less

7   than a year to trial, and they are still at a point where, you

8   know, we don't really know when it started, maybe.

9       You know, Your Honor, in my perspective I don't think that

10  is appropriate.  They have to have probable cause to have

11  brought the case.  They must have said to a grand jury:  This

12  is when we think it started and here is our evidence to show

13  that.

14      Now, it is one thing if Ms. Vartain was saying:  You know

15  what, we know by the time Stephen Chen went to Jinhua, that's

16  what we think the time was.  Maybe we will be able to prove it

17  a little bit earlier if something pops up.  That's not what

18  they are saying.

19      It is this amorphous maybe now, maybe now.  We don't

20  really need to box ourselves in.  You know, as Judge Alsup said

21  in the *Ward* matter, Your Honor -- in the *Cerna* matter -- I'm

22  sorry -- you know, a Defendant because we could be held

23  responsible for the acts of our co-conspirator, we need to know

24  what to defend.  We need to know when that all starts, so that

25  we need to know what acts we need to defend.

1    Stephen Chen doesn't join Jinhua until after or right

2  around the time of the Taiwanese raid.

3    Go back to the UMC press release where they said:  After

4  the raid, we found out about this information.  We stripped out

5  all of the potential Micron or Micron influenced information.

6    So that is the trouble we have.  Right now it is all

7  feeling very squishy and let's figure it out when we get into

8  trial.  But that deprives us of our due process.

9    **THE COURT:**  Well, if I order them -- excuse me -- if I

10  ordered Ms. Vartain or Mr. Hunter to tell you their theory as

11  to when this conspiracy -- not when it started but when your

12  client joined, I think they would probably say at the time that

13  Chen left and went to UMC.  Okay.

14    Now, I'm going to ask Ms. Vartain if that's what they are

15  leaving open to prove and would argue that given everything

16  that happened after, that is your theory.

17    If it is, I won't make you do it in a bill of particulars.

18    But what they are going to do is pull it back as far as

19  they can so they are not stuck if they come up with, you know,

20  evidence that they don't have beyond what we know about

21  already -- you know about already.

22    **MR. DiCANIO:**  Right so, Your Honor --

23    **THE COURT:**  Let me ask her right now.

24    **MR. DiCANIO:**  Sorry.

25    **THE COURT:**  Are you saying the conspiracy started --

1   not the conspiracy but the entry of Jinhua was at the time that

2   Mr. Chen left with whatever he knew in his head about Micron

3   secrets and brought that knowledge to UMC?

4           **MS. VARTAIN:**  No, Your Honor.

5           **THE COURT:**  Okay.

6           **MS. VARTAIN:**  And I think this is precisely why the

7   case law does not require -- very clearly does not require the

8   Government to plead when a co-Defendant enters the conspiracy

9   because the Government generally does not have that information

10  and the Ninth Circuit law is very clear on this point.

11          **THE COURT:**  Okay.

12          **MS. VARTAIN:**  We are not a fly on the wall.

13          **THE COURT:**  Oh, I'm sorry.  Let me just clear that up

14  for a minute.

15      Is it your understanding if you did use that as a starting

16  point, that you would not be allowed at trial to prove that

17  they entered later?

18                      (Pause in proceedings.)

19          **MS. VARTAIN:**  I don't -- I don't know.  If it were a

20  matter of pleading, Your Honor, in an indictment, I think I

21  could probably narrow the conspiracy without it being a

22  variance; but I haven't thought precisely about that issue.

23      And I would want to think about it and brief it to the

24  Court if that's something the Court would like me to do.

25          **THE COURT:**  No.  I -- actually, I think I may have

 1  misspoke.  If you answered in a bill of particulars a date,

 2  let's say, in 2015 but were only able to prove 2017 or '18,

 3  would you then be out of luck because you hadn't proved that

 4  they entered at the earlier date?  Is that the concern?

 5          **MS. VARTAIN:**  I am concerned about that.  I think I

 6  would have to research that issue.

 7          **THE COURT:**  Fine.  Okay.  And I can understand that

 8  and why I would not want them to have to commit to a particular

 9  date.

10      Frankly, they have not indicated that they have any

11  evidence at the moment beyond the circumstances themselves with

12  respect to the conspiracy starting at least any earlier really

13  than when the two companies got together and entered an

14  agreement.

15      That they have.  And they know that it's -- they know when

16  Mr. Chen went over to Jinhua.

17      Does he, by the way, actually then leave UMC in full or

18  just the position that he had at UMC?

19          **MS. VARTAIN:**  He left after February of 2017.

20  I believe there was about 18 months when he worked for both UMC

21  and Jinhua before he left and became fully an employee of

22  Jinhua.

23          **THE COURT:**  Oh, okay.  And Mr. DiCanio thinks that

24  isn't the case, and it may be that it is not the case.

25      In any event, I couldn't quite tell whether the

1    Government's idea was that he had -- I think you used a phrase

2    like he left his position.  I thought does that mean he was no

3    longer, let's say, in charge of DRAM production at UMC and he

4    became president in charge of DRAM production at Jinhua.

5        But I wasn't clear whether he actually was no longer an

6    officer or an employee of UMC.

7        Okay.  Let me see if there is anything else that I wanted

8    to go over here.

9        I'm not going to order the Government to give the exact

10   time beyond what they have already described just as being

11   their theory thus far.

12       I'm not going to really order a Bill of Particulars on

13   that.  I'm not ordering a Bill of Particulars at this time as

14   to the identification of the trade secrets because I would

15   prefer to await the disclosures and the expert reports.

16       And this is without prejudice to renewing this motion in

17   light of any deficiencies in those reports -- or at least

18   asserted deficiencies.

19       I think, frankly, that the Defendant has what the

20   Government has.  And the Defendant's position is essentially --

21   other than ID'ing the trade secrets, the Defense position is

22   that this isn't good enough.

23       And that can be the subject of motions if necessary if it

24   is not fleshed out at the close of the Government's case,

25   possibly even opening statement.

1       But we are not at that point, and I don't think they are

2   really holding back in that regard.  There just isn't a lot

3   more out there.

4       And, you know, Judge Alsup's case was so very

5   distinguishable from this one.  They had a zillion MS-13

6   defendants.  They had multiple conspiracies.  Some of these

7   people -- I think he said they at least ought to know when they

8   were supposed to join so they know what murder they were

9   responsible for.  At the time that some of these things were

10  alleged to have started some of these people were, like, in

11  grammar school.  I mean, you know, it really was very

12  different.

13      We have two real players here.  We have UMC and we have

14  Jinhua.  And that's really who you have got, a couple of

15  corporate entities.

16      And the Government doesn't know exactly who came to the

17  bright idea in their view of let's all get together.  You guys

18  get the trade secrets, and we will help you make the product.

19      So that is simplifying the case, but it is pretty much

20  what they have.

21      **MR. DiCANIO:**  Your Honor, I'm hopeful that if they did

22  have something, they would correct the record.  I'm assuming by

23  their silence, they are agreeing with you.  So we will take

24  them at their word.

25      **THE COURT:**  Their lack of word.

1          **MR. DiCANIO:**  I'm sorry?

2          **THE COURT:**  Their lack of word.

3          **MR. DiCANIO:**  Their lack of word.  I will say there is

4    something very different between this case and the case before

5    Judge Alsup.  And that is, I mean, the Government at this point

6    in time saying that they really don't know when we joined.

7          And that the only thing that they could point to is when

8    Stephen Chen became associated with Jinhua is very different

9    than any other case I have heard.

10         That will be a very interesting legal theory.  We will

11   have some fun with that down the road.

12         I am a little concerned, Your Honor, about what

13   Ms. Vartain said about the trade secret.

14         And I just want to highlight this for you because I think

15   we are going to be back to you, and I don't want you to think

16   that I didn't raise it.

17         **THE COURT:**  Okay.

18         **MR. DiCANIO:**  If the Government is going to take the

19   position this is a compilation trade secret, so the entire

20   document is a trade secret, fine.  I understand that.  I

21   understand how to litigate that.

22         But then what they can't do at trial is put up a bright

23   young expert or someone from Micron that says these are the

24   particular aspects of the trade secrets and why.

25         When they submit their expert report, they should be

1  limited by the contours of that report.  Otherwise, we will be

2  back to where we are when we filed this motion, which is we

3  don't know what you think the trade secrets are.

4      **THE COURT:**  Well, I think they ought to be able to do

5  the following:  To the extent that there is -- and we all know,

6  you can take a bunch of things that are out there publicly --

7  none of which are trade secrets individually -- put them

8  together in some creative way and all of the sudden you have a

9  compilation trade secret.

10     Now, if -- if this protyle compilation includes both --

11 includes components, if you will, for lack of a better word,

12 that the Government is not arguing themselves weren't known but

13 does include components that the Government is arguing

14 themselves -- wait a minute I'm not sure whether I said -- did

15 I say "were" or "weren't" first?

16     **MS. VARTAIN:**  Weren't.

17     **THE COURT:**  Weren't?  Okay.  And does include

18 components that were known, if they are going to rely on the

19 following argument, the whole thing is a trade secret because

20 it puts together all the parts.

21     And then -- okay.  Maybe they are not able to show, for

22 whatever reason, that Jinhua got the whole thing.  But then

23 let's say they have what you might consider a backup position.

24     Okay, maybe they didn't get the whole thing.  But they got

25 pieces A, B, Z, Y, D, and those have never been out there.

1        Okay.  They ought to be able to identify for you the

2   subparts that they argue have never been published or generally

3   known.

4        And that way you ought to then know:  One, it is the whole

5   thing, all right.  Fine, how to make a hamburger, okay.  Then

6   it turns out maybe there is how to make a bun or maybe there is

7   just a new bun, whatever it is, that they ought to be able to

8   identify the particular components that they assert nobody knew

9   about even, you know, just if they were individual pieces.

10        And that would then be something your experts could look

11   at and say:  Wait a minute.  We found this in a publication or

12   we are experts in the field and everybody knows that thing.

13        And that doesn't give up their full compilation.  But if

14   they aren't able to show that you got the full compilation,

15   which you want to say, okay, then you are stuck, I think they

16   have got to tell you what parts of it unless they want to say

17   every single thing in that document is secret.  And that's

18   unlikely that it is, you know, as an individual component.

19        So I think they should be able to do that.  And if they

20   have got a lot of secrets, then they will just have to identify

21   a lot of secrets.

22        **MS. VARTAIN:**  Your Honor, I don't think there is going

23   to be any surprise.  The Government has been entirely

24   consistent on this from the indictment and will be in the

25   expert disclosures as I have been in this hearing, that our

1  case is about the entire document being protectable trade

2  secrets.

3      And that is what the discovery shows.  It is what

4  witnesses will testify to, and it is what the expert

5  disclosures will shed some further light on but consistent with

6  what I just said.

7      So I wanted to make that point and --

8          **THE COURT:**  You want to make the point that if you

9  can't prove they got the whole thing, you are going to be not

10  able to prove that they got a trade secret.

11         **MS. VARTAIN:**  I don't think that's correct,

12  Your Honor, because --

13         **THE COURT:**  All right.  I'm going to order a bill of

14  particulars as follows -- just so that your expert knows when

15  they give the report -- that for every document that they --

16  that the expert says constitutes a compilation trade secret;

17  that to the extent that the Government is going to rely on any

18  individual parts themselves independently constituting a trade

19  secret, that those be identified.

20         **MS. VARTAIN:**  Okay.

21         **THE COURT:**  All right.  That will be the Court's

22  order.  And I want to do it now.  I wasn't going to do it, but

23  I rather say it now.

24      Otherwise, I think we are going to get some expert that

25  says:  I know what I'm talking about, and this whole thing is a

1  trade secret.  Nobody has ever done that whole thing before.

2      And if you want to rely on that whole thing and nothing

3  else, then you don't have to do anything else.

4      If you want to rely on:  Gee, you might not have gotten --

5  I don't know what they got.  You didn't get the whole thing but

6  you got parts A and B, and A and B have never been out there

7  before, then, okay.

8      They could be sub-compilations or they could be

9  subcomponents of just individual pieces of information.  I

10  don't know how knowledgeable Micron was in all this and what

11  they had.

12      But I think that somebody has to know if you are going for

13  the whole thing and only the whole thing or whether you are

14  reserving the right to say certain parts of it themselves are

15  trade secrets.  And if so, they ought to know.

16      In a lot of cases it won't be that big a deal; but because

17  the accusation is so broad, it is going to be a fair amount of

18  work so -- I don't want to say this before somebody gives you a

19  report -- okay.

20      It is kind of fair notice on that.  May stave off a

21  subsequent motion.  Okay.

22      All right.  So that's the one bill, if you will, that I'm

23  ordering.  The rest -- the motion is denied.  And so we will

24  leave it at that.

25      Okay.  Well, all right.  Everybody.  Very interesting.

1    Pretty interesting.  As far as these cases go, which may not

2    always be that interesting, this is actually pretty

3    interesting.

4            **MR. DiCANIO:**  I agree, Your Honor.

5            **THE COURT:**  I think, you know, if you go to trial, I

6    think you will actually -- the jurors will be interested in it

7    or at least I will be.  So I will be awake to rule on all your

8    objections --

9                        (Laughter)

10           **THE COURT:**  -- during the trial.  Okay.  All right.

11   Well, then that, I think, concludes it unless there is anything

12   final that anybody wants to say?

13           **MR. DiCANIO:**  No thank you, Your Honor.

14           **THE COURT:**  Nothing?  Nothing?

15                      (No response.)

16           **THE COURT:**  Okay.  Win a little bit.  Lose a little

17   bit.  That concludes our hearing at this time.  Thanks,

18   everybody.  We are in recess.

19           **MS. VARTAIN:**  Thank you, Your Honor.

20           **MR. DiCANIO:**  Thank you, Your Honor.

21              (Proceedings adjourned at 3:14 p.m.)

22                     ---oOo---

23

24

25

1

2

3                    <u>**CERTIFICATE OF REPORTER**</u>

4          We certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Thursday, June 24, 2021

8

9

10

11    _____

12              Marla F. Knox, RPR, CRR, RMR
                    U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25