Pages 1 - 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. CR 18-00465 MMC |
| | ) | |
| FUJIAN JINHUA INTEGRATED | ) | |
| CIRCUIT CO., LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

San Francisco, California
Wednesday, December 15, 2021

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
        STEPHANIE M. HINDS
        Acting United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
    **BY:  LAURA VARTAIN HORN**
        **NICHOLAS WALSH**
        **NICHOLAS O. HUNTER**
        **STEPHEN MARZEN**
        **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:
        SKADDEN, ARPS, SLATE, MEAGHER & FLOM
        525 University Avenue
        Palo Alto, California  94301
    **BY:  JACK P. DICANIO**
        **EMILY A. REITMEIER**
        **MATTHEW E. SLOAN**
        **ATTORNEYS AT LAW**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
        United States District Court - Official Reporter

<u>**Wednesday - December 15, 2021**</u>                    <u>**2:53 p.m.**</u>

<u>**P R O C E E D I N G S**</u>

**---oOo---**

    **THE CLERK:**  Calling criminal case 18-465, United States of America versus Fujian Jinhua Integrated Circuit Company.

    Will Counsel please step forward and state your appearances for the record.

    **MS. VARTAIN:**  Good afternoon, Your Honor, Laura Vartain, Nicholas Walsh, Nick Hunter, and Steve Marzen for the United States.

    **THE COURT:**  Give me just a moment.  Are you going to be taking the lead on this, Ms. Vartain?

    **MS. VARTAIN:**  I will argue to the extent the Court wants argument on the reciprocal discovery and Nick Hunter will argue the authentication matter.

    **THE COURT:**  Okay.  All right.  And for the Defendant, Fujian Jinhua?

    **MR. DiCANIO:**  Good afternoon, Your Honor, Jack DiCanio, Matt Sloan, and Emily Reitmeier on behalf of the Defendant.

    Your Honor, I will be taking the lead on the reciprocal discovery motion, and Mr. Sloan will be taking the lead on the authentication motion.

    **THE COURT:**  Okay.  Let me take a minute to get my

1   papers together, okay.

2                         (Pause in proceedings.)

3       **THE COURT:**  Okay.  We have two different motions that

4   were filed.

5       One is to extend the deadline for reciprocal discovery and

6   the other is -- that's the Defendant's motion -- and then the

7   Government has a motion regarding authentication.

8       I thought I had the papers on both.  So hold on a minute.

9   I think I do but haven't separated them out.  Just a moment.

10                        (Pause in proceedings.)

11      **THE COURT:**  I did bring out, like what I do often on

12  other matters, the file because it would be files and big ones.

13      And so I may have left the motion to extend -- I know what

14  my thoughts are on it, but I would like to have the motion out

15  here.

16      I'm going to go back to chambers for a minute and just see

17  if I can -- unless, Ms. Geiger, do you want to take one quick

18  look?

19      **THE CLERK:**  I can take a look.

20      **THE COURT:**  Okay, it is a motion to extend the

21  deadline.  Let me make sure again that I didn't just bring

22  it -- oh, no, wait.  I think I have it.  I have it.  Never

23  mind.  Okay, thank you.  Let's do that one first.

24      So on that particular matter, the Defendant would like to

25  have just -- in advance of essentially delivering any

1    documents, just an order extending the deadline.

2         I think the problem is, as the Government to a certain

3    extent, Mr. DiCanio has pointed out, they don't know what they

4    are facing.  And, frankly.  Six weeks before trial, which the

5    Defendant is saying, gee, that's really -- going to have 97

6    documents and who knows how many pages any of those documents

7    consist of but 97 documents and we will give them to you six

8    weeks before trial.

9         And, you know, a lot is going on at six weeks before

10   trial.  And as far as motions in limine go, it doesn't look

11   like they will be able to move if they have any concerns about

12   what you get.  And so, it is not ideal by any means.

13        My thought -- and I'm just telling you this isn't like a

14   drop dead order that you could never disclose something beyond

15   the deadline -- but my feeling is that if you have got things

16   that came in late -- and they may come in late for a variety of

17   reasons.  Some may be because the PRC didn't turn something

18   over.  Something else may be happening.  Time and again people

19   are playing the COVID card, whatever.

20        But, in any event, whatever the concern might be, if you

21   get it, you give it to the Government.  And if they tell you,

22   we are going to object to you being able to put it in; we got

23   it too late, that's the time then to make your showing as to

24   that exhibit.

25        It would be nice to have just an extension, and we often

1   do.  But this is so close and they have got translations.  And

2   even if you translate, they are going to want to check it.

3       I have got translations here on documents that go with the

4   other motion -- and, frankly, they are sort of weirdly worded.

5   I don't know how to put it -- these forms that concern the

6   particular agreement between Taiwan and the U.S.

7       And it is not really how somebody who is -- who speaks

8   English as a first language would necessarily say things.

9       So, my thought at the moment is we should wait without

10  precluding but just taking it up when the situation presents

11  itself.

12      Now, if you have any other thoughts on it, let me know.

13  Otherwise, I think I'm going to stick with that because it

14  seems reasonable to me.  I don't think the Government is going

15  to say anything.

16      **MS. VARTAIN:**  Nothing from the Government.  Thank you,

17  Your Honor.

18      **MR. DiCANIO:**  Only, Judge, that I have to tell you as

19  I was thinking about this in the last few days, I thought to

20  myself, that's probably what we should have done in the first

21  place.

22      I will tell you that the first tranche of documents we

23  provided today, we got approval yesterday.  We Bates stamped

24  and we produced them today.  And I think that makes perfect

25  sense.  So thank you, Your Honor, for that.

1          **THE COURT:**  Okay.  So you have turned some things

2    over?

3          **MR. DiCANIO:**  Yeah.  There were two batches.  The

4    first one we got approval for, so we turned them over today.

5    And we are hoping to get the second batch soon.

6          **THE COURT:**  All right.  Fine.  Then I think that I

7    will deny without -- this is what I will call it -- deny

8    without prejudice to specific request.  Okay.

9          **MS. VARTAIN:**  Thank you, Your Honor.

10          **MR. DiCANIO:**  Thank you, Your Honor.

11          **THE COURT:**  All right.  So, Ms. Geiger, do you have

12    that phrase?  Fine, thank you.

13          All right.  Let's turn to what -- turns out to be the more

14    complicated of the motions.  And this is the United States

15    motion to have the Court essentially deem authentic -- or at

16    least authentic enough that the jury can decide whether it is

17    authentic -- a variety of pieces of evidence.

18          And, all right, I'm going to start with a little intro

19    phrase just like I did with the last one.  I think there is a

20    problem here with what the Government is trying to do.

21          I know that it may be difficult or at least harder to have

22    to bring percipient witnesses to court.

23          But there is a difference between authenticating a

24    document; i.e., saying it is what it purports to be and

25    actually having it be admissible.

1          And in this instance what it looks like the Government is

2     trying to do is put in to evidence a variety of forms of

3     hearsay that ordinarily would not be covered at least by the

4     standard rules of evidence that we have here.

5          And when I look at the particular document that we are

6     talking about -- and let me get that in front of me because I

7     did print that out.  Nobody gave it to me, as I recall -- the

8     agreement on mutual legal assistance in criminal matters

9     between the American Institute in Taiwan and the Taipei

10    economic and cultural representative office in the U.S.

11         It looks like in -- what they are trying to do -- and I

12    may be incorrect -- but essentially provide the same available

13    ways of putting in evidence that is coming out of, for example,

14    Taiwan as would be available if they were, like, a U.S. company

15    or whoever is -- U.S. government entity.

16         There is one particular aspect that did give me some

17    moment to question, and I don't think anyone has addressed it;

18    but I will get to that in a little while if we need to.

19         But it seemed like there has to be a start.  Somebody has

20    to say, I went to these offices.  I picked up these computers.

21    And then how do we know which is Mr. Ho's desk or Mr. Wang's

22    desk or whatever.  And then put in the evidence.

23         And then if you have the evidence, you can say, yes, here

24    is a certificate that covers the chain of custody.  Take -- it

25    went from one to the other to the other.  Nobody fooled around

1  with it, if that's what happened.

2      And also, if you had a business record, all right, the

3  person who conducted the search hasn't given us what I would

4  call a business record foundation.

5      Furthermore, I just want to bring this up because it is

6  something that I was aware of but nobody mentioned it, which is

7  under the rules of evidence -- and let me get this for a

8  minute -- where is this particular matter?

9                  (Pause in proceedings.)

10      **THE COURT:** Hold on.  Yes.  All right.

11      Let's say you had what is the equivalent of a police

12  report or an FBI form, whatever, okay.  Ordinarily, you cannot

13  put that into evidence even though it is a public record under

14  Rule of Evidence 803 (8)(A)(ii), you can't use law enforcement

15  reports as public records in a criminal case.

16      Now, it so happens that in the records sections -- and

17  there are three in this particular agreement -- one is Article

18  IX, which nobody is really talking about but just means that if

19  you need a person, they are supposed to give them to you.  All

20  right.

21      Article X is what I would call a -- no, wait a minute.

22  Let me go back.  I think I did that wrong.

23      Article IX is -- yeah, if you need someone but I put

24  this -- sorry -- oh, no, it does include -- at the bottom it

25  includes business records.  So it has got a business record

1    exception.

2        And then Article X is public records.  And, again, very

3    similar to how the rules of evidence read.

4        For a business record you need a declarant as a custodian

5    saying this is the record kept by -- you know, in the ordinary

6    course of business.  The record is made close to the time of

7    the offense it is purporting to record, et cetera.

8        And then for public records, they just kind of assume

9    that's what happened.  And that's good enough.

10       But, again, the public record exception doesn't

11   necessarily mean that the content of the record is admissible.

12   It just means we keep it in the public.

13       So, somebody files a deed, okay.  That's recorded.  If

14   somebody wants to challenge it in some way, they can still do

15   that.

16       But in Article X where they are dealing with the public

17   records, they do say that if it is authenticated, it is

18   admissible.

19       And also Article IX says that as to what I will call a

20   business record -- they overlap obviously, a public business is

21   a business.

22       But, in any event, I don't know if it was intended to

23   trump 803, (8)(A)(ii), okay -- by saying okay if it is coming

24   from a foreign government, we will let you put in the police

25   report.

1    I don't know that it is really intending to do that; that

2    someone's rights as a Defendant in a criminal case should be

3    less just because it's a foreign entity.

4    But if we actually had to deal with that, we could.  I

5    don't think you have got anybody who stands in that position at

6    the moment.  You have people down the line.

7    And so I think that's the differential here, at a minimum.

8    Anyway, I'm happy to hear from the Government.  I just

9    think it is really tough for you to rely on these to get past

10   anything other than something is what it purports to be.

11   It purports to be something given to somebody in a

12   Prosecutor's Office.  Thank you.  It doesn't go anywhere.

13   Okay.  You are on.

14       **MR. HUNTER:**  Thank you, Your Honor.

15   I think just to address, before it leaves my mind, on

16   article -- the word "admissible" I don't think is admission.

17   So, all we seek in this motion is just to authenticate.

18   We are not seeking admission of content at this time.  We are

19   simply seeking that the article is what the Taiwan certificates

20   say that they are, which are items of evidence seized by

21   particular people on such-and-such and date.

22       **THE COURT:**  No, no, no.  You see, all they can really

23   say is somebody gave this to us.  And whoever gave it to them

24   would have to say where they got it from, how they got it, et

25   cetera.

1       Otherwise, all that you have as authenticated is something

2    that doesn't get you anywhere really.

3       You want to go beyond what is on the face of this.   In

4    other words, you want it to be said -- for example, you have

5    got tape recordings of some kind of conversation that occurred;

6    is that right?

7            **MR. HUNTER:**  Not the subject of this motion; but

8    correct, subject to one of our motions in limine.

9            **THE COURT:**  Yeah, somewhere.  Maybe that is in the in

10   limine motions.  They overlap to a certain extent.  There were

11   six motions, I believe.  I think maybe Number 6 overlapped with

12   this.

13      But there, let's say, you have a tape recording.

14   Ordinarily -- or recording of some sort, not necessarily on

15   tape -- but ordinarily you would need someone who would say I

16   was there.  This is either all of the conversation,

17   three-quarters of it, the thing went, you know, awry while we

18   were trying to do it or whatever, but something to lay a

19   foundation.  These things can be diced, spliced, put together

20   so many different ways.

21      So, you know, you are not dealing, let's say, with a last

22   will and testament and the dead person is dead and nobody saw

23   them write it; but someone says, yes, I recognize the

24   handwriting.

25      And then you may need to have somebody putting in

1   circumstances around it, et cetera.  And so even though you

2   don't have the author, it could be deemed to be an authentic

3   last will.

4        You don't have anything like that here.  You are really

5   dealing with something very different.

6        And then there is this whole big flap about the material

7   taken off of the computers.  And, yes, ordinarily someone says,

8   we got it and this is an exact copy that we then did whatever

9   we did afterwards.

10       And they say it's backwards here.  I don't know.  I don't

11  have all of that in front of me by way of witnesses who could

12  describe, either as experts or percipient witnesses, what

13  happened here and whether that should be submitted.

14       If it weren't, I think there is a real problem here

15  because it sounds like that's where you are saying the trade

16  secrets were.  But maybe you have other evidence of them

17  independent of those computer entries.

18       Anyway, I'm not dealing with that now.  So we have text

19  messages or something like that, instant messages.  And we have

20  what is on the computer, not being in or out but simply whether

21  it is enough to just say here is this declaration from the

22  prosecutor in Taiwan.

23       So I think we may have a problem with that.  How hard

24  would it be for you to get these people in here?

25            **MR. HUNTER:**  Well, Your Honor, our intent -- and we

1    believe that Taiwan, as late as yesterday, confirmed that the

2    lead investigator, Agent Leo Lee -- three MJIB witnesses, the

3    lead investigator, Agent Leo Lee, who was not on-site for the

4    seizures.  He was the person at headquarters who came when the

5    seizing agents came and collected the evidence and stored it.

6         The second would be the forensic examiner, Agent Chien,

7    who made the forensic copies of the evidence.

8         And the third would be an agent named Frank Pan, who is

9    one of the seizing agents who had some -- observed some other

10   facts.

11         **THE COURT:**  You really need the people who did the

12   seizure to start with.  I mean, the average, you know, criminal

13   case, let's face it, somebody comes in and says, we had a

14   warrant or whatever, exigent circumstances, what have you.

15         We got in there and I took or I saw -- name somebody --

16   take and then we did whatever we did with it; and it goes on

17   from there.  But you kind of need to start with the start, not

18   the end.

19         For example, your Exhibit A-1, that was someone who signed

20   that certificate as the prosecutor.  He says he is the

21   prosecutor.  He didn't say he was out there seizing anything.

22         Then for the A-1 -- that was A-1 at 1 to 2.  By the way,

23   none of these pages are numbered.  Okay.

24         Then you have Exhibit A-1 at 3, that was the people or the

25   prosecutor, the prosecutor's investigator, the prosecutor -- or

1   somebody's forensic officer, whatever that is.

2       I -- it isn't just saying, this is what we got.  It's this

3   is what we got and this is what it is.  Somebody told us that

4   they got it from somebody's office.  And, furthermore, it was

5   somebody's special computer and not somebody else's in that

6   office, et cetera.

7       And that's just going too far beyond authentication, I

8   think.

9       It just -- I don't think it works.  I think you really

10  need the people, and then you can just look and see, do you

11  have a chain of custody for it?  And that's really -- okay.

12  Take a look at whatever your note was.

13                  (Pause in proceedings.)

14          **MR. HUNTER:**  And I have a couple points to address but

15  whenever you are ready.

16          **THE COURT:**  Did you get your note?  Do you want to

17  look at it?

18          **MR. HUNTER:**  Yep.

19          **THE COURT:**  Okay.  Fine.

20          **MR. HUNTER:**  So, a couple points -- if I can just step

21  back to the certificates and try to explain them, the form B,

22  certificate of foreign public document, is really just a

23  certification that these records exist in the Taiwan district

24  court.  That's why it is signed by the prosecutor.

25          **THE COURT:**  I don't care if they exist in the district

1    court.

2       Let me just ask you:  In other words, let's say that's all

3    it says.  All right.  Why do you care?  What does it get you?

4       When you go to trial, what does it tell the jury?

5    Somebody turned this stuff over to some other prosecutor first?

6    I mean, but what is it?

7         **MR. HUNTER:**  And that's where the reference to the

8    indictment -- the Taiwan indictment is where the "what is it"

9    comes from in those forms.

10        **THE COURT:**  No, no.  Why is it relevant?  I'm

11   saying -- when I'm saying where does it get you, I just mean

12   how does it help prove your case that some prosecutor got this

13   stuff before you did being a prosecutor?  Now, okay.

14        **MR. SLOAN:**  Your Honor, I'm happy to address whenever.

15   I --

16        **THE COURT:**  No.  That's fine.  I'm just waiting to see

17   what he says because you expressed in your opposition an

18   uncertainty about how far they wanted to go in deeming

19   something authentic.  What did they mean by authentic?

20      And I think that the answer is they want to put in what

21   would be the equivalent of a police report essentially by way

22   of an authentication.  And I just don't think you can do it.

23        **MR. SLOAN:**  Your Honor, great, I mean, our position --

24        **THE COURT:**  Let me see what he is saying, and then we

25   will go back to it.  And I will point to one case in

1  particular.  I was reading various cases he gave me and looking

2  at cases.

3      But one I think kind of makes the point very clearly, at

4  least that I'm trying to make but, perhaps, not as artfully.

5          MR. HUNTER:  Your Honor --

6          THE COURT:  Keep going from the Government here

7  because it's --

8          MR. HUNTER:  Thank you, Your Honor.  The form C

9  certificates with respect to seized items are precisely trying

10  to accomplish that goal.

11      They are trying to provide a chain of custody from a

12  seizure of an item to the provision of that item to the United

13  States.  And that's what these do.

14      They are signed by the forensic officer, the prosecutor,

15  who -- the way things work in Taiwan -- is part of the chain of

16  custody and MJIB agent.  That's why there are three signatures.

17      It is meant to provide the chain of custody, and that is

18  how legal assistance treaties with all sorts of countries work.

19  They provide for these types of forms.

20          THE COURT:  Has anyone ever pointed out to you that

21  you speak very fast?

22          MR. HUNTER:  Sometimes.

23          THE COURT:  Okay.  Because I think the court reporter

24  may be ready to let you know if I don't.  And I want to be able

25  to follow your argument, okay.  We have plenty of time.

1          **MR. HUNTER:**  Okay.

2          **THE COURT:**  Okay.  So, there is nobody else out there

3    saying, why don't they wrap this up.  All right.  We already

4    did that case.  So just you.

5      Now, I think what we are dealing with, the chain of

6    custody, you are really dealing with people who don't play any

7    role in proving up the case, so to speak.

8      They are just people that had things and are giving them

9    to you.  And to the extent somebody falls into that fairly

10   innocuous chain of custody, clearly you wouldn't have to haul

11   them in from Taiwan.

12     But if they are -- if they are doing anything with

13   something, then that may be something because they have to

14   disclose if they altered the item in any way.

15     So if that's the case, then that may be something where

16   somebody would have to, perhaps, make clearer or what have you.

17     But if you just have someone who says, they gave it to me;

18   I gave it to Harry; and then Harry comes in and files one.

19   Because you need one for every piece of the chain.

20     So you have person A who says, I got it.  I gave it to B.

21   B says, fine, I got it and I gave it to C, et cetera; and it is

22   stored; and then they gave it to you.  Okay.

23     But somewhere you have got to have what it is, all right.

24   Not how it didn't change, what it is in the first place.

25     And you want me to be able to say that if someone was told

1    that it came from some investigation, that that's good enough.

2         And I don't think it is.  I don't think that's what the

3    authentication is.

4         The business record exception could give you an angle; and

5    then we could argue about whether the admissible trumps, so to

6    speak, 803, which says it isn't if it is law enforcement.

7         Now, you know, if it is the Agriculture Department of

8    Taiwan or something, fine.  But if it is law enforcement and

9    somebody is trying to put in their whole case off of an FBI

10   report, it's not going to work.  That's why they call the FBI

11   agents.

12        **MR. HUNTER:**  Well, Your Honor, in that circumstance,

13   we have agents here.  In the circumstance of a case where the

14   evidence is coming from internationally --

15        **THE COURT:**  You are going very fast and you have a

16   mask on.  Keep it --

17        **MR. HUNTER:**  Apologies.  In the circumstance of an

18   international case where evidence is coming from an

19   international government or another government of a foreign

20   state, that's why these treaties exist or that's why this

21   international agreement in the case of Taiwan exists.

22        **THE COURT:**  But you don't have a police report.  You

23   have a report from a -- you know, the equivalent of the U.S.

24   attorney in Taiwan saying somebody gave me this stuff.

25        If there were a criminal case and somebody gave you

something and you wanted to get on the stand and say, this all came from the Defendant's house.

Objection.  Sustained.  You can't do it.  And I don't think it's trying to change the whole course of -- the rules of evidence.

There may be one discrepancy here.  It is not clear. Nobody has actually looked into it, I'm sure, because I'm just bringing it up.

But, in any event, ordinarily even if you had a full declaration, you know, as a business record, certified or whatever, from whoever it was who went out there and seized this stuff on behalf of the law enforcement agency in Taiwan, I'm not sure whether you could put it in.

I'm thinking you may be able to because this whole treaty has to do -- well, it is not a treaty; but, as you say, it is like one -- it has to do with criminal cases.

If it were broader than that, then one might say, well, okay, they are not purporting to say what you do in a criminal case; but it is solely related to criminal prosecution and investigation.

So, where that would fit, I don't know.  I wouldn't test it, if I were you.  If you were going to have to call some people anyway, why not just call the people you need?

This is a case that happened somewhere else, okay.  And they have already been prosecuted, to the extent anybody wanted

1    to, in the place where it happened.

2         And you want to prosecute them here as well, that's fine.

3    But you may need people who just don't happen to live here.

4         And I'm -- I don't want to mislead you by thinking -- you

5    don't want to get to the first day of trial and think that you

6    are going to be able to put things in.  They object and I

7    sustain and you are sitting there.

8         That's why you made this motion ahead; to see what I would

9    do.  And I just want you to know that I don't think I can do

10   what you want me to do.

11        So, if -- I guess that's where we are at the moment.

12   Let's see.

13             MR. HUNTER:  Your Honor, can I point you to one case

14   before we move on?

15             THE COURT:  Yes.  Which one?

16             MR. HUNTER:  I just wanted to point you to the *United

17   States v. Matta-Ballesteros* case from the Ninth Circuit.

18             THE COURT:  I don't know if I printed that one.  Did

19   you give it to me before?

20             MR. HUNTER:  Yeah, I believe it was cited in our reply

21   brief.  It's at 71 --

22             THE COURT:  Wait, wait, wait.

23             MR. HUNTER:  Sorry.

24             THE COURT:  Okay.  Seventy-one?

25             MR. HUNTER:  It's 71 F.3d. 754.

**THE COURT:**  Okay.  What do you think it holds?

**MR. HUNTER:**  That was a case where the custodian of an audio recording of a tortured DEA agent was authenticated or allowed to be authenticated by the Court after -- where there was no custodian of the tape.  And the Court --

**THE COURT:**  Well, yeah, I wonder if I -- you know, it is very familiar; and I wonder if I read it but didn't print it.

The Defendant's last name is spelled?

**MR. HUNTER:**  M-A-T-T-A-B-A-L-L-E-S-T-E-R-O-S.

**THE COURT:**  Yeah, I think I read it or read something like it.

Audio recordings, by the way, are very typical of things that may be authenticated by sound of voice or whatever.

But, again, now, we are not talking at the moment about the tape recordings.  All right.  So that's coming up.

But we are talking about things that aren't audio recordings.  We are talking about things that are -- really are only relevant if they came off a particular computer, if they were unadulterated when they did so.  And that's a lot different than what you are talking about.

That's why I was saying if it looks like a will, if it sounds like somebody; but we are not at that point.  And I'm not sure -- I will read it again, okay, to see if -- I don't think it has a bearing on what I'm looking at now.  It may have

1    more of an interest in what is coming up.

2        Let me just read you one little area from a case called

3    *U.S. v. Doyle*.  That is a criminal case, and this would be

4    at -- well, I will give you the cite, though it is somewhere

5    anyway, 130 F.3d. 523.

6        This is from the Second Circuit.  And it goes back some

7    time, but I think that it has an interesting point here.

8        Now, they were talking about 903, which is in the 900

9    sections, you know, dealing with authenticity.

10       To satisfy Rule 903 the official does not need to attest

11   to the truth or trustworthiness of the facts contained in the

12   document.  Accuracy of its content is the concern of other

13   Federal Rules such as the many rules concerning hearsay in

14   Rules 801, et. seq.  The only concern of Rules 901 et. seq. is

15   assuring that evidence is what it purports to be.

16       Now, all that anybody can say something purports to be if

17   it was handed over to the equivalent of your office in Taiwan

18   is it something somebody gave me.

19       And I haven't played around with it.

20       **MR. HUNTER:**  And in our case something that the Taiwan

21   law enforcement seized.

22       **THE COURT:**  No, you can't do that.  It's too far back.

23   They don't know whether it was seized.  They can't tell you it

24   was seized by any particular person, from any particular place,

25   on any particular day.

1        The only way they are able to say it is because someone

2    told them that.

3        They weren't there.  And if they weren't there, then they

4    have to fill out the equivalent of a business record

5    declaration under these forms.  Let's look at -- wait a minute.

6    Let me see which one we are talking about here.

7                        (Pause in proceedings.)

8        **THE COURT:**  A is the business record one; that would

9    say the records were made at or near the time of the

10   occurrence; they are kept in the ordinary course of business;

11   it is the activity.

12       In other words, that is the equivalent of someone coming

13   in and actually testifying about facts.

14       Nobody gave us one of those from anybody who was in a

15   position to say it.  I don't even know if they create those

16   reports.

17       But my concern is even though it says it is admissible, if

18   this were out of our government, it would not be, not under

19   803.  And there is a real conflict there between those two.

20       So, all I'm saying is that if you wanted to actually put

21   that before me as a real issue, you would still need to give me

22   something that you haven't given me.

23       And I wouldn't recommend you do it if you really want to

24   try this case without, you know, a bunch of extraneous

25   appellate issues if you should win.

1    You ought to have your people.  That's my view.

2    Okay.  He wants to say something.  What do you want to

3    say?

4    **MR. SLOAN:**  Probably the better part of the discussion

5    is not to speak.  What I will say is, you know, I have agreed

6    with what you have said.

7    The principal problem here is they are purporting that

8    these items of evidence are seized from experts on X day at X

9    time and X person was using them.

10    That's just classic hearsay evidence.  It goes to the

11    heart of the case.  They claim that these are the key documents

12    in the case.

13    If they want to establish a foundation -- I apologize if

14    I'm speaking too fast -- if they want to establish a

15    foundation, they do need to call the law enforcement witnesses

16    who have percipient knowledge of that conduct; and they have to

17    be subjected to cross-examination.

18    We have a right to cross-examine them, both because of the

19    hearsay rules and, frankly, the confrontation clause.  So

20    that -- that's -- that's what I have to add, Your Honor.

21    **THE COURT:**  Yeah, for the confrontation clause -- I

22    know you raised *Crawford* in your opposition.  If somebody were

23    trying to put in interviews of any sort in the context of --

24    primarily by law enforcement or could be someone acting in that

25    capacity, perhaps -- you are going to run into *Crawford*

1    problems if it is during the course of events.

2        Even if it weren't a co-conspirator statement, if there

3    were some other hearsay exception, you wouldn't have

4    necessarily a *Crawford* problem.

5        In any event, I do -- I just want to tell you that you can

6    say, well, it is authentic.  That's all we are asking.

7        And I think if somebody just gave me a declaration saying,

8    I'm the prosecutor and this is what somebody gave me, okay.

9    Let's not bother to have them come in.

10       But your office stands in that, you know, context all the

11   time; and I don't see any, you know, U.S. Attorney's getting on

12   the stand and proving their case that way.  So -- well, you got

13   another note.

14                        (Laughter)

15       **THE COURT:**  You should just keep Ms. Vartain up here,

16   and then she wouldn't have to travel as far.

17       So I really -- I don't -- I'm inclined to deny not because

18   I'm necessarily denying these last parts but because I think

19   you are asking for more than that; and I don't really know how

20   to phrase it given everything here or even if I could

21   particularize every point.

22       But you need the starting people in the Court's view.  And

23   then if you want to put in declarations from people saying, I

24   got it because they didn't want to hold it anymore; they gave

25   it to us; and we gave it to you, okay, fine.

1        You know, then you -- you can prove that part up.  If

2   someone wants to say it is a public record; we hold this in our

3   drawer, you know, in the courthouse, okay.  That doesn't do

4   anything.  It's just a thing with no real -- if you want to

5   say, okay, this is something that looks like it came off a

6   computer, yeah, from where?  Objection.  From who?  Objection.

7        It's not going to work.  I don't want to act out the whole

8   trial.  I'm hoping that it won't be -- and I can't play all

9   these parts anyway.

10       But I do think it's not going to fly, you know, just in

11   laymen's terms; and that you should really see who you can get.

12       The trial is coming up pretty quickly, all things

13   considered, as your office points out, when they want to put in

14   things a lot later than they ordinarily had a chance to do.

15       **MR. HUNTER:**  Your Honor, just to inquire with you,

16   your thinking on this, when you say the starting person, there

17   is the seizing agent; and then there is an agent who then

18   receives the seized device.

19       **THE COURT:**  I don't care about the receiver except to

20   the extent the receiver did something with something.

21   Otherwise, the receiver should just say, I got it and passed it

22   on.

23       But what is it?  What is it, where it came from, who had

24   it beforehand is what is important here.

25       Let's face it, if you had a felon with a gun case and

1   somebody says, okay, I'm in the U.S. Attorney's Office and here

2   is a gun.  You know, yes, it is authentic.  I didn't do

3   anything with it.  Fine, fine, okay.  Swell.

4        And then you sit down, that is not a case against the

5   Defendant.  You are going to have to have somebody who comes in

6   and says, I went to their house or I arrested them or whatever;

7   he had the gun on him or he had the gun near him or he had

8   whatever.

9        And I know that it is harder because you have foreign

10  witnesses but you can't air mail in your case.  You have to

11  actually put it in.

12       Sorry.  But -- so --

13       **MR. HUNTER:**  Your Honor, what I would say to that --

14  just curious what your input is as we are trying to arrange

15  this --

16       **THE COURT:**  Yeah.  Get the guy who found it.

17       How many more times can I say it?  Get the person who

18  found the evidence, where they found it, and what they did with

19  it.

20       And then you get your next person if you need them who is

21  either already signed a certificate or they haven't saying, I

22  got it and I kept it until -- undamaged or whatever they did

23  with it -- and then they passed it on to you, okay.

24       You have to have the facts of your case.  This is a

25  criminal case.  You have to have the people who know what

1   happened.  Have them come in.  It's not an earth-shattering,

2   new idea.

3        You can't try a case just based on that there is some

4   evidentiary rule.  I don't know what to say more than that.

5        So, this treaty or whatever you want to call it, this

6   agreement, says they are supposed to give you the important

7   people.  So they should.

8        That's what it says.  That's the section you didn't talk

9   about, I think, yeah, or at least not that part of it.

10       This all here were all your exhibits, which I ended up

11  putting in a big binder, so I could flip through them and

12  actually see what we had.

13       And -- that was one of the things that I just thought was

14  kind of odd.  Let me just see -- one of these seemed like it

15  was the wrong phrasing.  Let me just -- I want you to look at

16  this for a minute.  This is form C.  Have you got a copy of

17  that?

18       **MR. HUNTER:**  Which exhibit, Your Honor?  There is

19  multiple form Cs.

20       **THE COURT:**  Well, it is form C.  And form C is an

21  attachment -- oh, I'm sorry -- form C I got by printing out the

22  agreement which, as I say, you relied on but didn't give me.

23  So, one of these exhibits is probably a form C.  Let's see if

24  we can find -- maybe you can find one that's a form C.

25       **MR. HUNTER:**  Both A-1 and A-2 have a form C.

```
 1              THE COURT:  Okay.  What page would I be on for C?

 2                        (Pause in proceedings.)

 3              THE COURT:  Have you got a page or a Bates number?

 4              MR. HUNTER:  Sure.  If you are looking at Exhibit A-1,

 5   it's --

 6              THE COURT:  Let's see.  I'm in A.

 7              MR. HUNTER:  It starts with form B.  It doesn't say

 8   form C.  It says certificate with respect to seized items,

 9   which is the form C.  They just removed the "form C" from

10   the --

11              THE COURT:  Can you give me a Bates number or

12   something?

13              MR. HUNTER:  Docket 220-1.

14              THE COURT:  No, no.  But the -- these aren't -- you

15   know, they are not numbered.  Like A-1 has a bunch of things

16   behind it, I think.

17              MR. HUNTER:  Yeah, Exhibit A-1, I think, the third

18   page excluding the cover sheet is a certificate with respect to

19   seized items.

20              MR. SLOAN:  It's page 4 of 7.

21              THE COURT:  Excuse me.  I may have to get some water.

22   I wonder if I'm looking in the right place.  I see something

23   called certificate with respect to seized items.

24              MR. HUNTER:  That's correct.  The one they gave us

25   they removed "form C" from the top.
```

1          **THE COURT:**  They changed the language, interestingly,

2     of the actual form that is part of the agreement, so let me

3     just look at it for a minute.

4                    (Pause in proceedings.)

5          **THE COURT:**  See, it tries to go beyond the -- what I

6     think the form C is supposed to be, but it may not.  I mean, I

7     would have to look.

8          They are trying to talk about the origin, if you will, of

9     the item.  I don't think they can do it in the form C, okay.

10         What got me in looking at the agreement in the form C --

11    and they give this form C a format for how you use these

12    various things -- agreement talks about it -- and so they had a

13    sentence that read, I received custody of the articles listed

14    below from blank.

15         And then it says name of person on blank date at blank

16    place.  And then it says in the same condition as when I

17    received them.

18         Well, that's meaningless.  I received them in the same

19    condition as I received them.  I think it is supposed to be "I

20    received them in, perhaps, and retained them in the same

21    condition I received them" or words to that effect.  But it

22    doesn't have that.  It has this meaningless phrase.

23         So that's what is actually the form C that is referenced

24    in the -- let's see, which portion of this -- agreement, let's

25    see, wherever they reference it.  They give you a copy of it

1   and --

2           **MR. SLOAN:**  Your Honor, I think it is referenced in

3   Article 15 of the agreement, if that's what you are referring

4   to.

5           **THE COURT:**  I don't know.  Maybe -- oh, here it is.

6           **MR. SLOAN:**  In the second paragraph.

7           **THE COURT:**  So in Article 15, they reference form C.

8   Form C has a meaningless declaration, but that could be the

9   translation.  I don't know or maybe that is what it is supposed

10  to be in which case it doesn't make any sense because I don't

11  think that's what they were trying to get people to say.

12      They were trying to say, I retained it in the same

13  condition that I received it, not I received it in the same

14  condition I received it.

15      Anyway --

16          **MR. HUNTER:**  Which is what our executed form C says.

17          **THE COURT:**  Yes, well, they fixed it fortunately.

18  But, okay, so you were asking me what should we do.  You know,

19  try it like a regular case.  That's about the best I can say.

20          **MR. HUNTER:**  Thank you, Your Honor.

21          **THE COURT:**  I'm going to deny this.  And I will say

22  deny without prejudice to -- I will just say denied without

23  prejudice.  And then you can make various showings, inquiries,

24  et cetera, as we go along.

25      But I don't want to mislead you.  I think you are going to

1    have to call people beyond those that you were hoping to have

2    to call.

3              **MR. HUNTER:**  Understood.

4              **MR. SLOAN:**  Thank you. Your Honor.

5              **THE COURT:**  All right.  Well, curious, interesting

6    thank you.  We will be in recess, correct, Ms. Geiger?

7              **THE CLERK:**  Correct.  Court is in recess.

8                    (Proceedings adjourned at 3:39 p.m.)

9                              ---oOo---

10

11

12                    <u>**CERTIFICATE OF REPORTER**</u>

13         I certify that the foregoing is a correct transcript

14   from the record of proceedings in the above-entitled matter.

15

16   DATE:   Thursday, December 16, 2021

17

18

19                    _Marla Knox_

20   _____

21        Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
          United States District Court - Official Reporter

22

23

24

25