STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

TOM COLTHURST (CABN 99493)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
NICHOLAS WALSH (CABN 314290)
Assistant United States Attorneys

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-7200
      Laura.Vartain@usdoj.gov
      Nicholas.Walsh@usdoj.gov

NICHOLAS O. HUNTER (DCBN 1022355)
STEPHEN MARZEN (NYBN 2007094)
Trial Attorneys, National Security Division

      950 Pennsylvania Ave., NW
      Washington, DC 20530
      Tel: (202) 353-3434
      Fax: (202) 233-2146
      Nicholas.Hunter@usdoj.gov
      Stephen.Marzen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  v.<br><br>FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD,<br><br>     Defendant. | CASE NO. 18-CR-00465 MMC<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO PARTIALLY EXCLUDE THE TESTIMONY OF DR. THOMAS W. DYER<br><br>The Honorable Maxine M. Chesney<br>Pretrial Conf: January 18, 2022, at 10:00 am<br>Courtroom 7, 19th Floor |

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

RELEVANT BACKGROUND ...........................................................................................1

ARGUMENT ......................................................................................................................2

    I.      The United States Will Stipulate That Experts Should Not Offer Opinions
           Whether Information is a "Trade Secret" Under 18 U.S.C. § 1839(3) ...............................2

    II.     "Misappropriation" of Trade Secrets is Not an Ultimate Issue ...........................................3

CONCLUSION....................................................................................................................5

**INTRODUCTION**

The United States intends to offer the expert testimony of Dr. Thomas Dyer at trial to explain the Indicted Trade Secrets (i.e., Trade Secrets 1-8 in the Indictment) and defendants' use of them.  Jinhua's motion to exclude portions of Dr. Dyer's opinions ignores the structure and content of his expert disclosure and misapprehends the charged statutes.  Jinhua's motion appears primarily directed at precluding Dr. Dyer from testifying to the purported "ultimate issue" of whether Indicted Trade Secrets meet the definition of "trade secret" under 18 U.S.C. § 1839(3).[1]  The United States deems such "ultimate issue" testimony of little consequence.  It will therefore stipulate that experts should not opine on the "ultimate issue" whether information is a "trade secret" under the statute.  Dr. Dyer will testify as to the definitional elements of "trade secret," as described in his disclosure.

Jinhua's motion to preclude testimony about "misappropriation" and whether defendants "stole" Micron's trade secrets misapprehends the law and Dr. Dyer's disclosure.  "Misappropriation" is not an element of the charged offense, let alone an ultimate issue (unlike a civil case).  And the United States did not notice, and does not intend to elicit, testimony from Dr. Dyer about whether defendants "stole" Micron's trade secrets.

**RELEVANT BACKGROUND**

On July 2, 2021, the United States disclosed the expert testimony of its DRAM-process expert, Dr. Thomas Dyer.  Dr. Dyer has spent countless hours reviewing the documents and Indicted Trade Secrets in this case and determining whether—and the extent to which—the joint DRAM development between defendants United Microelectronics Corporation ("UMC") and Jinhua known as Project M used Indicted Trade Secrets 1-8 to develop DRAM.  Dr. Dyer found that Project M's use of Indicted Trade Secrets 1-8 went far beyond a single rogue employee referencing and incorporating information from one of the Indicted Trade Secrets.  Dr. Dyer found that, at the project's inception, Project M employees copied Micron Technology, Inc.'s ("Micron") entire 25 nanometer process flow and used it as the

---

[1] Whether the Indicted Trade Secrets meet the legal definition of "trade secret" under 18 U.S.C. § 1839(3) is not the "ultimate issue" in this case. And for the conspiracy counts, it is no issue at all. *See United States v. Liew*, 856 F.3d 585, 600 (9th Cir. 2017) (government need not prove existence of actual trade secrets for conspiracy counts, only that defendant believed certain information was a trade secret).

benchmark—or starting point—for Project M.  Dr. Dyer traced the ensuing engineering effort to alter Micron's process flow so Project M could (1) implement the Micron process in a new fabrication facility (*i.e.*, Jinhua), (2) maximize use of existing tools in UMC's logic-fabrication facility, and (3) develop DRAM that it could more easily evolve into future technology generations.  Dr. Dyer's analysis shows that from its inception to its formal "transfer" to Jinhua, Project M's process flow was based on Micron's.  Even where Project M altered the Micron 25 nanometer process, Dr. Dyer determined that many of those changes came from the Indicted Trade Secrets associated with later generations of Micron's process technology (e.g., Micron's "1x nm" process flow).

As detailed in its Rule 16 disclosure, the United States intends to elicit expert testimony from Dr. Dyer regarding (1) a general overview of DRAM and DRAM-process technology; (2) descriptions of the Indicted Trade Secrets 1-8; (3) why the Indicted Trade Secrets meet the definitional elements of a "trade secret" under 18 U.S.C. § 1839(3); and (4) the extent to which Project M used information in Indicted Trade Secrets 1-8 to develop DRAM.

## ARGUMENT

### I.   The United States Will Stipulate That Experts Should Not Offer Opinions Whether Information is a "Trade Secret" Under 18 U.S.C. § 1839(3)

The United States' disclosure for Dr. Dyer breaks out his trade-secret opinions by the definitional elements of "trade secret" under § 1839(3).  The title of section II states that the information in indicted Trade Secrets 1-8 "Meet *Elements* of the Definition of 'Trade Secret.'"  Dyer Disclosure at 6. After providing summary description of Indicted Trade Secrets 1-8, the disclosure provides detailed summaries of Dr. Dyer's opinions with respect to the following elements of the definition: (1) the information in each of Indicted Trade Secrets 1-8 is not generally available in the public domain, Dyer Disclosure § II.B; (2) the information in each of Indicted Trade Secrets 1-8 is not readily ascertainable through proper means by a person or company skilled in the field of semiconductors, Dyer Disclosure § II.C; and (3) the information in Indicted Trade Secrets 1-8 derives independent economic value from its secrecy, Dyer Disclosure § II.D.  *See* 18 U.S.C. § 1839(3) (including those elements, in addition to the requirement of reasonable measures to protect secrecy).  After seven pages of summary related to those elements, the disclosure includes a single paragraph stating that, after listening to the testimony about

1   Micron's protective measures, Dr. Dyer may testify that each of Indicted Trade Secrets 1-8 is a trade

2   secret under 18 U.S.C. § 1839(3).  Dyer Disclosure § II.E.

3          Jinhua's motion all but ignores the structure and substance of Dr. Dyer's disclosure.  Jinhua

4   states that "Dr. Dyer offers outright legal conclusions . . . without touching on the underlying legal

5   factors or elements, thereby improperly substitute his own opinions for those of the jury."  Jinhua Mot.

6   At 5.  That is incorrect.  Dr. Dyer's opinion on the purported "ultimate issue" of trade secrecy is

7   confined to a single paragraph among roughly seven pages addressing the definitional *elements* of "trade

8   secret."  Jinhua does not appear dispute that Dr. Dyer's opinion on the elements of the definition of

9   "trade secret" are proper.  "[A]n expert may provide facts and analysis which lead the jury toward [the]

10  conclusion" that information is a trade secret.  *See, e.g.*, *Caudill Seed & Warehouse Co. v. Jarrow*

11  *Formulas, Inc.*, No 3:13-cv-82, 2019 WL 1435934, at *3 (W.D. Ky. Mar. 29, 2019) (citing cases).

12         Jinhua's mischaracterization appears aimed at excluding more than just testimony on the

13  purported ultimate issue of whether the Indicted Trade Secrets are "trade secrets" under the statute.

14  Jinhua cites numerous instances of the word "trade secret" in Dr. Dyer's disclosure outside of the

15  ultimate-issue section.  Jinhua Mot. At 4-5.  But those uses of the term "trade secret" are just a short-

16  hand way to refer to the information the United States alleges is a trade secret and that Dr. Dyer believes

17  is protectable as a trade secret (under the legal or colloquial definition).  One of the instances of the term

18  cited by Jinhua even explicitly states Dr. Dyer will testify information is a trade secret "or meets the

19  elements of the definition of 'trade secret.'"  *See id.* at 4 (quoting Dyer Disclosure at 6).

20         In light of the conflicting case law and the insignificance of having Dr. Dyer state the obvious

21  after opining on most of the definitional elements of "trade secret," the United States will agree that

22  experts (including Jinhua's) will not testify to whether information meets the legal definition of "trade

23  secret" under 18 U.S.C. § 1839(3).

24  **II.    "Misappropriation" of Trade Secrets is Not an Ultimate Issue**

25         Dr. Dyer's opinions will help the jury understand how Project M used the information

26  defendants stole from Micron to develop a DRAM manufacturing process.  Section III of Dr. Dyer's

27  disclosure summarizes his findings on the extent of that use.  Based on a thorough review of Micron

28

UNITED STATES' OPP.
TO DEF.'S MOT. IN LIMINE NO. 1
18-CR-00465 MMC                    3

documents and countless Project-M documents, Dr. Dyer determined that Project M used an exact copy of a Micron 25 nanometer manufacturing process as the starting point for its own. Dr. Dyer analyzed the Project M process flow as it evolved over time to determine how it deviated from Micron's process and, in some instances, the source of process technology for those deviations.

Unlike a civil trade-secret case, such evidence of a defendant's use of a stolen trade secret—sometimes called "misappropriation"—is not an ultimate issue in this criminal case. The word "misappropriation" does not appear in either of the charged statutes. *See* 18 U.S.C. §§ 1831, 1832. The only substantive, non-conspiracy count against Jinhua (Count 7) charges a violation of 18 U.S.C. 1831(a)(3). That section applies to one who "*receives*, *buys*, or *possesses* a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization." 18 U.S.C. § 1831(a)(3) (emphasis added). The United States must also prove defendants acted or conspired with the intent to benefit a foreign government or instrumentality, 18 U.S.C. § 1831(a), and to injure Micron and benefit itself., 18 U.S.C. § 1832(a).

Dr. Dyer's opinions on defendants' extensive use, or "misappropriation," of the stolen trade secrets is strong circumstantial evidence of the required intent. His opinions and their bases tend to prove, for example, that Project-M employees did not unwittingly possess the stolen Micron trade secrets. Nor did they possess the information merely as part of a technical library that would sit on the shelf for future pleasure reading or study. Instead, Dr. Dyer will show how Project-M engineers used Micron's stolen information—including the Indicted Trade Secrets—as the very basis upon which to develop DRAM from Project M. Project M employees, copied, misappropriated, used, referenced, altered, downloaded—or whatever other relevant verb one can call it—aspects of Micron's process technology both large and small: from the entire sequence of hundreds of manufacturing steps, to detailed recipe parameters for individual steps specified to decimal places. Dr. Dyer's opinions in that regard are not opinions on an ultimate issue. Instead, his opinions—and more importantly the bases for them—are overwhelming circumstantial evidence of defendants' intent and of the breadth of the Project M conspiracy to develop DRAM with stolen technology.

1    Use of the term "misappropriation" at trial, therefore, is a non-issue.  Unlike the term "trade

2  secret," "misappropriation" is not a loaded legal term in a criminal trade-secret case.  The United States

3  and its expert, therefore, should be free to use that term to express the nature of Dr. Dyer's opinions.

4  But the issue is not critical.  Dr. Dyer will use colloquial terms like "copied," "used," "referenced,"

5  "altered," or "duplicated" to express his opinions about what Jinhua did with Micron's trade secrets.

6  Whether he can also use the term "misappropriated" is of little moment.

7    Similarly, the use of the word "stolen" in Dr. Dyer's disclosure is shorthand for how the United

8  States refers to the information it alleges the defendants stole from Micron.  The United States does not

9  intend to elicit testimony from Dr. Dyer that defendants stole Micron's information.

10                                    **CONCLUSION**

11    The United States will stipulate that neither party's expert witness should offer testimony on the

12  issue whether information meets the relevant legal definition of "trade secret."  The Court should deny

13  Jinhua's motion to the extent it seeks to preclude Dr. Dyer from testifying about defendants' use and

14  copying of the Indicted Trade Secrets or using the term "misappropriation" in that context.  The Court

15  need not enter an Order precluding Dr. Dyer from testifying that Jinhua stole Micron's trade secrets,

16  because the United States did not notice such testimony and has no intention on eliciting such testimony

17  from Dr. Dyer.

18

19  Dated: December 22, 2021                    Respectfully Submitted,

20                                    STEPHANIE M. HINDS
                                      Acting United States Attorney
21

22                                         _____/s/_____

23                                    LAURA VARTAIN HORN
                                      NICHOLAS WALSH
24                                    Assistant United States Attorneys

25                                    NICHOLAS O. HUNTER
26                                    STEPHEN MARZEN
                                      Trial Attorneys, National Security Division
27

28