STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
NICHOLAS WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Laura.Vartain@usdoj.gov
    Nicholas.Walsh@usdoj.gov

NICHOLAS O. HUNTER (DCBN 1022355)
STEPHEN MARZEN (NYBN 2007094)
Trial Attorneys, National Security Division

    950 Pennsylvania Ave., NW
    Washington, DC 20530
    Tel: (202) 353-3434
    Fax: (202) 233-2146
    Nicholas.Hunter@usdoj.gov
    Stephen.Marzen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD, <br><br> Defendant. | CASE NO. 18-CR-00465 MMC <br><br> UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO CONDUCT WITNESS TESTIMONY REMOTELY <br><br> The Honorable Maxine M. Chesney <br> Courtroom 7, 19th Floor |

## INTRODUCTION

On Tuesday, March 22, 2022, in the fourth week of trial, and 11 months after being informed of the trial date, Defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") moved to take testimony of three of its witnesses by video during its impending defense case-in-chief. *See* Dkt. 407. The Court should deny Jinhua's request for live video testimony for two reasons:

First, the mechanism that Jinhua proposes to take testimony is not lawful. Requests to take evidence by defendant from the People's Republic of China ("PRC") must go through the letters rogatory process.

Second, Jinhua's mid-trial request does not establish that it is either necessary or that it will ensure reliable testimony for any of the three witnesses.

## ARGUMENT

### I. JINHUA'S MID-TRIAL REMOTE-TESTIMONY REQUEST DOES NOT COMPLY WITH PRC LAW ON INTERNATIONAL CRIMINAL JUDICIAL ASSISTANCE

Taking evidence from the PRC for use in United States criminal proceedings may occur only through proper channels; in this case, because it is the defendant that wants to take evidence from the PRC, it must initiate the letter rogatory process. Jinhua appears to have not initiated that process.

According to the United States Department of State, pursuant to PRC law, letters rogatory are the only method available to criminal defendants for obtaining any type of evidence from China. U.S. Department of State, "China Judicial Assistance Page," https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html ("Criminal defendants or their defense counsel seeking judicial assistance in obtaining evidence . . . abroad in connection with criminal matters may do so via the letters rogatory process."). The International Criminal Judicial Assistance Law of the People's Republic of China provides the following:

> Article 4. The People's Republic of China and foreign countries carry out international criminal judicial assistance in accordance with the principle of equality and reciprocity.
>
> The international criminal judicial assistance shall not damage the sovereignty, security and social public interests of the People's Republic of China, and shall not violate the basic principles of the laws of the

> People's Republic of China.
>
> Foreign institutions, organisations and individuals may not conduct criminal proceedings under this Law, and the institutions, organisations and individuals within the territory of the People's Republic of China shall not provide evidence materials and assistance provided in this Law to foreign countries, without the consent of the competent authority of the People's Republic of China.

International Criminal Judicial Assistance Law of the People's Republic of China Article 4.

The letter rogatory process is required for obtaining "evidence" in China without limitation, it is the government's understanding that the process would also be required for remote videoconference testimony. The OIA attorneys consulted by the undersigned agreed that a letter rogatory would likely be required for remote testimony from the PRC.

Notably, Jinhua has invoked PRC laws blocking provision of evidence to delay its production of reciprocal discovery, and to sanction its redaction of personal information in the documents it has produced. On November 18, 2021, Jinhua filed a request to delay its reciprocal discovery and said this:

> in order to transmit potential evidence located in China to the United States…Jinhua must comply with a number of PRC laws and regulations, including, but not limited to…the International Criminal Judicial Assistance Law of the PRC…Specifically, Article 4 of the International Criminal Judicial Assistance Law of the PRC provide that '…institutions, organizations and individuals within the territory of the People's Republic of China shall not provide evidence, materials, and assistance provided in this Law to foreign countries, without the consent of the competent authority of the People's Republic of China.'

Dkt. 232 at 4.

As of this morning, Jinhua made another late production of documents, with redacted information to comply with PRC law, and designated these never-before-produced documents as trial exhibits.[1]

As a matter of law, Jinhua cannot simply set up a camera in some location and sign into Zoom and present the testimony of three witnesses without offending the same PRC laws upon which it has relied to claim excuse in timely and fulsome reciprocal discovery. To the extent that the PRC waives

---

[1] The government will separately address this untimely production of evidence.

UNITED STATES' MOT. ADMIT MESSAGES
18-CR-00465 MMC                    2

compliance with its law on international criminal judicial assistance for video depositions but denies an exit visa to Jinhua's chairman, the Court should take into account the selective application of PRC law to force the Court to permit remote testimony of PRC nationals to assist a PRC state-owned entity in it's defense without the discipline of an effective remedy for perjurious testimony. Further, Jinhua's selective application of PRC law in ignoring it wholly while suggesting live video testimony in lieu of in person testimony while asserting that it cannot timely or wholly comply with reciprocal discovery obligations cuts strongly against Jinhua's request. Jinhua is claiming the benefit of PRC law where it suits its defense, and ignoring it where it does not.

## II. JINHUA'S MID-TRIAL REMOTE-TESTIMONY REQUEST DOES NOT ESTABLISH THE REQUIRED NECESSITY AND RELIABILITY

### A. Remote Testimony Requires Proof of Necessity and Reliability

Federal Rule of Criminal Procedure 26 requires testimony of witnesses taken in open court absent exceptional circumstances. *See* FED. R. CRIM. P. 26 ("In every trial the testimony of witnesses must be taken in open court, unless otherwise provided by statute or by rules adopted under 28 U.S.C. §§ 2072-2077."). Following the Supreme Court's decision in *Maryland v. Craig,* 497 U.S. 836, 840 (1990), the Ninth Circuit allows for remote video testimony when the denial of physical confrontation "is necessary to further an important public policy" and reliability is ensued. *See United States v. Carter*, 907 F.3d 1119, 1208 (9th Cir. 2018) (remote video testimony should be in rare cases where it is necessary); *cf. United States v. Soblen*, 203 F. Supp. 542, 568-69 (S.D.N.Y. 1961) (denying Fed. R. Crim. P. 15 deposition absent immunity from arrest) ("In our jurisprudence, the theological sanctity of a witness's oath or the ethical obligation of his affirmation is reinforced by the legal sanction of the law of perjury. To stipulate in advance that a witness whose testimony is sought will be given immunity against arrest here for his possible perjury would stultify the administration of justice. By destroying the legal significance of the witness's oath or affirmation, such a stipulation would make the witness a law unto himself, with only such conscience as he may possess as his guide.").

There are commonsense rationales for this rule. A factfinder is best able to assess the truthfulness and reliability of a witness in the same room. *See, e.g.*, *Stoner v. Sowders*, 997 F.2d 209, 213 (6th Cir. 1993) ("The witness is not confronted in the courtroom situation. The immediacy of a

living person is lost. In the most important affairs of life, people approach each other in person, and television is no substitute for direct personal contact."); *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) ("Closed-circuit television should not be considered a commonplace substitute for in-court testimony by a witness. There may well be intangible elements of the ordeal of testifying in a courtroom that are reduced or even eliminated by remote testimony."); *United States v. Nippon Paper Indus. Co.*, 17 F. Supp. 2d 38, 42 (D. Mass. 1998) ("Studies have suggested that television and videoscreens necessarily present antiseptic, watered down versions of reality.  Much of the interaction of the courtroom is missed.") (citing study).

In *United States v. Banki,* the Court confronted a situation similar to the one here: a defense request to present witness testimony remotely.  2010 WL 1063453, *2-3 (S.D.N.Y. 2010). The Court noted that while "[t]he Government's interest in confrontation may not be of constitutional proportions…these cases suggest that the Court should evaluate whether the proposed testimony has similar indicia of reliability as a matter of public policy."  The cases that the Court cited to were *Craig* and *Gigante*. The Court declined to permit the remote testimony because there was insufficient evidence of reliability where the witnesses were located beyond the reach of the United States government in Iran, where there are no diplomatic relations with the United States.  *See Banki,* 2010 WL 1063453 at *2. The Court found that even if the Court were to administer the oath to the witnesses, there was no way to ensure truth-telling because the government could not prosecute for perjury or false statements: "[w]ithout the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital." *Id.* The Court also highlighted that the government's ability to cross-examine them in person. *Id.* at *3.  *See also Gigante*, 166 F.3d at 81 ("There may well be intangible elements of the ordeal of testifying in a courtroom that are reduced or even eliminated by remote testimony.").

In court on Wednesday, March 23, 2022, Jinhua suggested that because this case is a bench trial, there are no reliability concerns because the Court can make the judgment as to the credibility of witnesses and put forward a truly exceptional case in support of that proposition: *United States v. Donzinger*, 2020 WL 6364652 (S.D.N.Y 2020). The Court might enjoy reading about the saga of that case,[2] in which the criminal charges for which Donzinger was on trial were contempt charges brought by

---

[2] *See e.g.*, https://www.forbes.com/sites/michaelkrauss/2021/08/31/donziger-hail-mary-pass-is-

the court and prosecuted by special prosecutors, not the Department of Justice. Having been lied to repeatedly by Donzinger and initiated contempt proceedings, the court likely knew precisely what it was getting into when it permitted remote testimony of Donzinger's witnesses. That case's extraordinary set of facts should not control this situation.

The better analysis of the relevant considerations is in *Banki*: "The ineffective oath, coupled with the lack of opportunity for in-person cross-examination and observation, makes it extremely difficult to assess the reliability of the proposed witnesses' testimony." *Id.* at *3.

**B.    Facts about Defense Witnesses**

On January 11, 2022, Jinhua's counsel listed Messrs. Wensheng and Wu and Professor Jiang as witnesses 1, 5, and 11 respectively as defense witnesses. Dkt. 313, at 2. At the time Jinhua's counsel listed those three witnesses, they presumably inquired whether they could travel to the United States to testify in person at trial. Despite voluminous pre-trial briefing, Jinhua's counsel did not move to depose the three witnesses under Criminal Rule 15, did not inform the Court that any witnesses could not testify in person at trial, and instead negotiated with the government for more than two months (from December 24, 2021 to February 26, 2022) over the terms of a safe-passage letter – which the government provided to facilitate the live, in-court testimony of eight Jinhua witnesses and two corporate representatives. The eight Jinhua witnesses include Messrs. Wensheng and Wu.

None of the purported health issues arose after Jinhua filed its witness list. The conditions ascribed to Messrs. Wenshen and Wu and Professor Jiang all appear to date back a year or more. Although the doctors' notes all date from about two weeks ago – after the start of this trial – they reference long-standing concerns. Although COVID-19 may well exacerbate the witnesses' health conditions, COVID-19 is two years old. Compared to the date of Jinhua's witness list in mid-January, COVID-19 has become less of a concern, not a greater concern, as the Omicron variant has petered out in the United States. Indeed, if the witnesses are genuinely concerned about the virus, they are safer in the United States than in the PRC.

Restrictions on COVID-19-related travel in the PRC are also not new and are being relaxed

---

incomplete/?sh=2bb5ee9060ad.

UNITED STATES' MOT. ADMIT MESSAGES
18-CR-00465 MMC                                            5

around the world. Although the PRC seems to be managing COVID less successfully in recent days compared to the rest of the world, the COVID lockdown in Fujian Province seems quite selective. According to Jinhua, the lockdown might prevent travel out of the province, but would not prevent a gathering for remote testimony, which would necessarily include operators of the technology, the witness, an interpreter, and presumably defense counsel's co-counsel in the PRC.

If Jinhua wanted to present live, in-court testimony, it could tender other, healthier witnesses from its list of defense witnesses. The testimony of Messrs. Wensheng and Wu is described in generic terms and other fact witnesses should be able to travel even if they are not.

The individual circumstances of the three witnesses lack credibility. Mr. Wensheng's declaration of required in-person daily meetings would seem to require him to work every business day of the year and prevent a vacation. At an undisclosed date, Mr. Wensheng requested permission from the Fujian provincial government – for whom he works and which owns the defendant – to apply for a visa, and apparently did not receive permission from the Provincial government to travel because he is needed at work. There is no back-up to this assertion by Mr. Wensheng, leaving the United States and the Court to trust his self-serving assertion without an opportunity to look into the matter further.

Mr. Wensheng's and Mr. Wu's health conditions are not uncommon. If persons with such conditions did not fly then airplanes would fly empty. In Mr. Wu's case, his mid-trial medical test reflects an improvement to within a normal range. As for Professor Jiang, her condition is vague.

### C. Facts about Government Witnesses

The government asked five witnesses to travel from Taiwan to testify. Three of these were law enforcement officers who were out of duty for nearly a month due to their testimony. All of the witnesses were subject to lengthy quarantines. The law enforcement witness completed their quarantines the same day Jinhua filed its motion, March 22, 2022. The other two witnesses are still in quarantine at the time of this filing, and are expected to be in quarantine until Friday, March 27, 2022, despite having testified in the first week of trial.

Furthermore, an additional valuable witness for the United States, who was expected to travel here for testimony, had health issues just a few weeks before trial. As a result, the government was unable to secure that witness' presence and testimony. The government did not obtain video testimony

of that witness, as it would have, just as Jinhua's request here does, violated Federal Rule of Criminal Procedure 26, which requires testimony of witnesses taken in open court absent exceptional circumstances.

### D. Jinhua's Untimely Request Does Not Establish Necessity or Reliability

A cursory reflection on the practical consequences of Jinhua's motion reveals significant procedural concerns. The Court would be unable to reliably confirm the identity of the proposed witnesses. The Court would be unable to reliably administer the oath to the witnesses. The Court would be unable to observe fully the witnesses' demeanor or otherwise to absorb the physical cues that human beings used to identify deceit when in proximity to others. The proposed witnesses could not be subject to contempt proceedings were they to ignore the Court's instructions, and would face no consequences whatsoever for testifying falsely. Were the witnesses to be intimidated in China, the United States would have no means to bring to justice those guilty of the intimidation. Finally, the United States has no extradition treaty with the PRC. Courts are generally loathe to allow testimony from countries from which extradition of a witness would be unlikely.

Several times, the defense has asked for leeway to secure the presence of its witnesses at trial. The Court accommodated that by moving the court date once. The government provided safe passage guarantees, which carved out only that the defense witnesses could be prosecuted if they lied under oath. A live feed of the trial has been provided to the PRC so that Jinhua's corporate representative need not attend trial in person. Not content with these accommodations, Jinhua now wants to present testimony of two insider witnesses and one expert—and to do so without explaining how it would ensure a meaningful oath or any other guarantees of reliability. There is little to suggest that this testimony is necessary, and nothing to suggest that the testimony will be reliable.

If the Court nonetheless orders testimony from the PRC in any form, the Court should mandate procedural safeguards to ensure reliability to the maximum extent possible. The Court would not know the identity of other persons present in the same room or facility as the proposed witnesses, while they testify or the effect that such presence may have on the witnesses. The Court would not know the potential social, political, physical, or legal consequences to the witnesses were they moved to testify truthfully in a manner reflecting poorly upon Chinese officials. The Court should assume that all three

of the proposed witnesses, were they to testify from a closed room within the PRC, would be doing so with the knowledge and perhaps involvement of Chinese officials.

Finally, as the defendant seeks this testimony, the defendant bears the burden of persuading the Court that the testimony will be reliable—a burden Jinhua has not yet attempted to meet.[3]

**CONCLUSION**

The Court should deny Jinhua's request for three witnesses to testify remotely from the PRC, as it is too late to do so lawfully, too late to build in reliability guarantees, and too unnecessary for these issues to be overlooked. If the Court nonetheless orders testimony from the PRC in any form, the Court should mandate procedural safeguards to protect the trial's proceedings.

Dated: March 24, 2022

Respectfully Submitted,

STEPHANIE M. HINDS
United States Attorney

/s/
LAURA VARTAIN HORN
NICHOLAS WALSH
Assistant United States Attorneys

NICHOLAS O. HUNTER
STEPHEN MARZEN
Trial Attorneys, National Security Division

---

[3] Jinhua has not provided any details regarding this mechanics of remote testimony from the PRC. Jinhua should explain what procedures will be used to ensure that no witnesses are improperly influenced, including by government officials, while in the PRC.