STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
NICHOLAS WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Laura.Vartain@usdoj.gov
    Nicholas.Walsh@usdoj.gov

NICHOLAS O. HUNTER (DCBN 1022355)
STEPHEN MARZEN (NYBN 2007094)
Trial Attorneys, National Security Division

    950 Pennsylvania Ave., NW
    Washington, DC 20530
    Tel: (202) 353-3434
    Fax: (202) 233-2146
    Nicholas.Hunter@usdoj.gov
    Stephen.Marzen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 18-CR-00465 MMC |
|     Plaintiff, | UNITED STATES' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO REMOTE TESTIMONY |
|     v. | |
| FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD, | The Honorable Maxine M. Chesney<br>Courtroom 7, 19th Floor |
|     Defendant. | |

**INTRODUCTION**

The United States provides supplemental briefing as it concerns: (1) Defendant Fujian Jinhua Integrated Circuit Co., Ltd.'s ("Jinhua") written filing to take remote trial testimony of Lu Wensheng, Wu Kunrong (Albert Wu) and Professor Jiang Yang as filed on Wednesday, March 23, 2022; (2) Jinhua's oral request based on the COVID situation in Fujian Province for remote trial testimony or, in the alternative, a continuance for witnesses Wu Kunrong, Jeff Yu, and Wu Junsheng, to an unknown time at which they can travel to the United States to testify; and (3) the relevance of Jinhua's opening statement given on April 4, 2022, on those issues.

The government respectfully submits that the Court should deny all requests for remote trial testimony. First, it is the government's understanding that remote testimony from witnesses within the People's Republic of China ("PRC") violates PRC law absent the PRC's consent. Although Jinhua represented that it had the PRC's consent for some undefined form of testimony more than two weeks ago, documentation has not been provided. And even if the PRC government provided consent, Jinhua has failed to show that remote testimony is practical given the absence of a venue with meaningful formality, an oath that must be taken seriously, or a workable time, place, and manner for taking testimony. Moreover, for many witnesses it will not expedite testimony because they purportedly cannot travel at all. Critically, it also does not satisfy Federal Rule of Criminal Procedure 26.

Instead, if there is a remedy to this situation, it is for Jinhua to secure the presence of its witnesses to testify live in this Court in the traditional manner at the earliest possible date. In determining the duration of a modest continuance, the Court should consider Jinhua's diligence in obtaining the presence of the witnesses. Despite much discussion, Jinhua has never explained whether any of its witnesses had plane tickets to travel, or why it did not ask its witnesses to fly prior to any lockdowns were in place. The facts of diligence are relevant to whether a continuance is appropriate, and if so, how long of a continuance to grant.

Lastly, the expert labor-law expert witnesses should be considered separately because their testimony is to the Court in its capacity as law-giver and not to the Court in its capacity as fact-finder. As law-giver, the Court hears foreign law experts such as Jinhua's labor-law professor and the government's labor-law expert Professor under Criminal Rule 26.1.

In short, the government respectfully requests that the Court deny Jinhua's remote testimony request. Instead, the government recommends that the Court set a date certain for the remaining fact witness testimony and closing argument, and require frequent updates from Jinhua to ensure that the Court and the government have information about what diligence is being applied to ensure travel at the earliest possible dates.

**RELEVANT FACTS**

**I.     The Record as to Timeliness Regarding Remote Witness Testimony[1]**

One year ago, on April 15, 2021, this case was set for trial on February 14, 2022, giving Jinhua ample notice to prepare for trial. *See* Dkt. 161 (Amended Order for Criminal Pretrial Preparation).

On the eve of trial, Jinhua asked for a modest continuance to get corporate representatives to trial, explaining only that the necessary visa approvals were not completed. The government did not oppose a short continuance, so long as there was no loss of the jury pool. The Court granted a short continuance on that basis. After that continuance, Jinhua waived its right to a jury trial and, as the Court is aware, no corporate representatives have subsequently appeared at trial.

Trial started on Monday, February 28, 2022.

On Wednesday, March 23, 2022, Jinhua for the first time asked to take remote trial testimony of three witnesses based on health issues: Lu Wensheng, Wu Kunrong (Albert Wu), and Professor Jiang Yang. *See* Dkt. 407 (Motion to Conduct Witness Testimony Remotely). In that motion, Jinhua mentioned the possibility that a COVID outbreak in the region where Jinhua is located might impact Mr. Wu's ability to travel. Despite the apparent heads up that the witnesses had about an impending lockdown, there are no facts that establish that any of the witnesses endeavored to be present at trial before the lockdowns were in place.

---

[1] The defense has likewise been late on discovery obligations. Jinhua has far exceeded its deadline to produce reciprocal discovery, which was November 19, 2021. On the eve of that deadline, Jinhua filed a request to extend the deadline. At a hearing on December 15, 2021, the Court denied Jinhua's request for an extension of its November 19, 2021 deadline, and invited the government to raise objections upon production of discovery.

Jinhua produced discovery on December 15, 2021, in January 2022, and on March 23, 2022. The government intends to object to any exhibit produced on March 23, 2022 as untimely produced. Further, as to all productions, the government will object to documents that are heavily redacted, purportedly to comply with PRC law. Regardless of the purpose, the redactions on certain documents are extensive and compromise authenticity and relevance.

UNITED STATES' SUPPL. MEMO. IN OPP. TO REMOTE TESTIMONY
18-CR-00465 MMC                              2

On Thursday, March 24, 2022, Jinhua informed the Court that a lockdown in Fujian Province impacted three witnesses that it hoped to call at trial: Wu Junsheng, Albert Wu, and Jeff Yu. To date, beyond general representations from Jinhua's counsel in court, there has been no evidence as to where the witnesses reside as it concerns the lockdowns, what the scope of the lockdown is, whether there are exemptions, or any other concrete information.

Also on Thursday, March 24, 2022, the United States opposed the request to take remote testimony based on the merits of the health concerns raised and untimeliness of the request. *See* Dkt. 412 (United States' Opposition to Defendant's Motion to Conduct Witness Testimony Remotely).

Since then, Jinhua has informed the Court that the lockdown continues such that Wu Junsheng, Albert Wu, and Jeff Yu cannot travel to trial.

On March 28, 2022, Jinhua suggested that Wu Junsheng, Albert Wu, and Jeff Yu could travel to the United States Consulate in Guangzhou for testimony and that based on discussions with the Central Government of the PRC, some approval from the PRC government will be needed. Although the government has asked in court for more clarity about what approvals are at issue, to date Jinhua has given no further indications. On March 30, 2022, Jinhua clarified that due to the lockdown, these witnesses could not presently travel to Guangzhou.

However, also on March 28, 2022, the United States Department of Transportation approved China Eastern Airlines' application to divert flights normally scheduled to and from Shanghai Pudong International Airport to utilize Fuzhou Changle International Airport in Fujian Province. *See, e.g.*, Application of China Eastern Airlines Corporation Limited for an Emergency Exemption and Motion to Shorten Answer Period, Docket DOT-OST-2020-0052 (granted by the United States Director of the Office of International Aviation on March 28, 2022, allowing two weekly flights into Fuzhou Changle International Airport from New York John F. Kennedy International Airport). Simple online research regarding flight bookings show that Fujian Province appears to have flights to and from various cities in the United States that are operating out of the province's two international airports: Fuzhou Changle International Airport, in the north of Fujian Province, and Xiamen Gaoqi International Airport, in the south of Fujian Province.

On April 1, 2022, an FBI linguist fluent in Mandarin queried relevant PRC-government websites

UNITED STATES' SUPPL. MEMO. IN OPP. TO REMOTE TESTIMONY
18-CR-00465 MMC                                      3

and identified that the Fujian Provincial government website was silent as to a lockdown, and showed the website was updated on March 30, 2022. A national government website listed that there were lockdowns in Shanghai, Guangzhou, and Shenzhen, but did not list Fujian Province or the city within it where perhaps one of the witnesses is said to reside, which is Jinjiang. Other websites indicate partial lockdowns in Jinjiang, with a medium risk category assigned to certain areas (with low and high risk being the other categories) and note that there may be exceptions given for some work or travel. The FBI Legal Attaché in Beijing reports that there appear to be high case counts in part of Jinjiang, where perhaps one of the witnesses at issue resides, and so there may be restrictions on travel, but notes there is no clear, definitive information.

On April 4, 2022, for the first time, Jinhua suggested that to address the complexities of remote trial testimony arising from the time difference, the defense witnesses could be administered the oath at the United States Embassy and then sit with government personnel in a neutral third party location to give their testimony. Moment later, in his opening statement, defense counsel gave a long list of things that he expects Lu Wensheng to say when he testifies, including about various facts that other people – including from "the highest levels of UMC" – told him. To the extent that that information is admissible, it should be provided by the witness – not through counsel – and subject to the normal requirements of an oath and opportunity to cross-examine. The opening statement also explained what Albert Wu, Jeff Yu, and Wu Junsheng will say.

II.   The Record of the Merits of Each Request, Focusing on Timeliness

The first time Jinhua raised remote testimony as to any witness was on March 23, 2022, 11 months after the trial date was set, and nearly a month into trial, and approximately when the government was expected to rest. Below is a summary of the relevant information, as best the united States can cobble together from the information provide by Jinhua:

| Witness | First Date of Disclosure | Basis of Request for Remote Testimony | Basis of Request for Continuance to allow for in person testimony | Facts |
|---|---|---|---|---|
| Albert Wu | March 23 at Dkt. 407. | Health Concerns | | Date of doctor's appointment: March 7, 2022 for pre-existing health conditions. |

UNITED STATES' SUPPL. MEMO. IN OPP. TO REMOTE TESTIMONY
18-CR-00465 MMC                                         4

| Witness | First Date of Disclosure | Basis of Request for Remote Testimony | Basis of Request for Continuance to allow for in person testimony | Facts |
|---|---|---|---|---|
| Jeff Yu | March 24 – on the record | | Lockdown / Purports to be willing to travel | Applied for a Visa on March 13, issued March 22 |
| Wu Junsheng | March 24 – on the record | | Lockdown / Purports to be willing to travel | Applied for a visa on February 28 |
| Lu Wensheng | March 23 at Dkt. 407. | Fujian Province denied his request to travel and health concerns | | No visa |
| Professor Jiang | March 23 at Dkt. 407. | Health concerns | | Health condition since 2021. Applied for and received a visa in December 2021. |

### A.   Wu Kunrong (Albert Wu)

To date, Albert Wu has not applied for a visa or Electronic System for Travel Authorization ("ESTA") visa waiver program to travel to the United States for this trial based on the records available to the government, which has queried records from both places where the government understands he has residence: the PRC and Taiwan. Neither location shows any application.

Albert Wu has proffered health reasons for not being able to testify at trial. The government has addressed the health reasons, *see* Dkt. 412, but highlights the timeliness of Mr. Wu's request for remote testimony and his doctor's visit, which post-dates the start of trial. The health concerns that Mr. Wu presented also were not new, nor does travel appear to be prohibited based upon them.

Based on the defense opening statement given April 4, 2022, Mr. Wu has much to say in Jinhua's defense. He should travel here, be administered the oath, and be subject to cross-examination. His March 7, 2022 doctor's visit to discuss longer standing issues which were never disclosed to the government does not present an exceptional reason for remote trial testimony.

### B.   Jeff Yu

Jeff Yu applied for a visa on March 13, 2022 and it was issued on March 22, 2022. On March 24,

1 | 2022, Jinhua informed the Court that it would like to call Jeff Yu said that Yu was unable to travel at this point in time due to lockdown. The United States does not know where Jeff Yu resides.

### C. Wu Junsheng

Wu Junsheng applied for a visa on February 23. He is apparently subject to the lockdown. The United States does not know where Wu Junsheng resides.

### D. Lu Wensheng

The government will not again address the merits of Lu Wensheng's declaration, as the Court has already commented on it. Lu Wensheng is the witness for whom the Fujian Provincial government has decided he cannot leave the province due to his workload. Lu Wensheng, according to the defense opening statement, has a large amount of testimony to offer in the case, and he should come here to do it, so that he can be administered the oath and tested through cross-examination.

### E. Professor Jiang Yang

Professor Jiang applied for a visa in December 2021. The government previously addressed the Professor's longstanding health concerns, *see* Dkt. 412, raised for the first time on March 23, 2022.

## ARGUMENT

### I. REMOTE TESTIMONY FROM THE PEOPLE'S REPUBLIC OF CHINA IS NOT LEGALLY PERMISSIBLE UNDER PRC LAW AND IT IS NOT PRACTICAL

#### A. PRC Law Does Not Permit Testimony from Mainland China without the Consent of the Competent Authority of the PRC and None has Been Given

Article 4 of the International Criminal Judicial Assistance Law of the People's Republic of China bars the provision of "evidence materials and assistance" from the PRC for use in a foreign criminal proceeding "without the consent of the competent authority of the People's Republic of China":

> Article 4. The People's Republic of China and foreign countries carry out international criminal judicial assistance in accordance with the principle of equality and reciprocity. The international criminal judicial assistance shall not damage the sovereignty, security and social public interests of the People's Republic of China, and shall not violate the basic principles of the laws of the People's Republic of China.
>
> Foreign institutions, organisations and individuals may not conduct criminal proceedings under this Law, and the institutions, organisations and individuals within the territory of the People's Republic of China shall not provide evidence materials and assistance provided in this Law to foreign countries, without the consent of the competent authority of the People's Republic of China.

Jinhua appears to agree with the government's understanding of Article 4, because it invoked the same article to delay production and redact its reciprocal discovery. On November 18, 2021, Jinhua asked to delay its reciprocal discovery and represented to the Court:

> in order to transmit potential evidence located in China to the United States…Jinhua must comply with a number of PRC laws and regulations, including, but not limited to…the International Criminal Judicial Assistance Law of the PRC…Specifically, Article 4 of the International Criminal Judicial Assistance Law of the PRC provide that "…institutions, organizations and individuals within the territory of the People's Republic of China shall not provide evidence, materials, and assistance provided in this Law to foreign countries, without the consent of the competent authority of the People's Republic of China."

Dkt. 232 at 4.

Although Jinhua represents that it applied for the PRC's consent (for what, precisely, Jinhua has not explained), and although Jinhua's remote-testimony motion was filed more than two weeks ago on March 22, 2022 (Dkt. 407), the Court still lacks any formal documentation of PRC consent, and any terms and conditions attached to such consent for testimony from PRC nationals within the territory of the PRC for use in a United States criminal proceeding, or at a United States facility. For diplomatic reasons as well as reasons besides those of state, the United States government requires Jinhua to provide this required consent before it can meaningfully address Jinhua's remote-testimony request, and has asked for this information in court but has not received it.

**B.   Even with PRC Consent, Remote Testimony Requires Proof of Necessity and Reliability and Is Not Practical in this Case**

Federal Rule of Criminal Procedure 26 requires testimony of witnesses taken in open court absent exceptional circumstances. Fed. R. Crim. P 26; *see* Dkt. 412 (discussing cases and rationale). There are no exceptional circumstances here, particularly because Jinhua was beyond late in requesting and disclosing the purported need for remote testimony. Even if a lockdown in the PRC that prohibited travel could be a reason to consider remote testimony, the facts here demonstrate that none of the fact witnesses are too sick to travel, none gave the government or the Court an opportunity to learn about their purported health conditions, and none have explained why they did not endeavor to travel before any lockdowns were in place, particularly since the trial was already well under way and the defense case was approaching when the request for remote trial testimony was made.

Jinhua originally offered remote testimony for the witnesses who it contends cannot travel due to health reasons, as well as those who are unable to travel due to purported lockdown. However, more recently, Jinhua clarified that the witnesses subject to lockdown—Wu Junsheng, Albert Wu, Jeff Yu—also cannot travel for remote testimony at a consulate or embassy. Therefore, to the extent the witnesses are in fact in lockdown, the remote testimony will not expedite matters. Even more recently, Jinhua has suggested that perhaps travel would be possible for one or more of those witnesses. Their status thus remains unclear. As a result, the Court should requiret their testimony be in court live at the earliest possible date.

In any event, the proposed remote trial testimony has enormous procedural complications. As stated in court, the government believes remote testimony from a consulate or embassy in the PRC is unprecedented. The personnel will need to be available to assist, and to complicate matters, the time difference means that likely would require off-hours assistance. Further, the technology will need to be set up and confirmed to work. Setting aside these fundamental challenges, cross-examination by way of video feed is challenging even without the complications of this case: language barrier, and a need to show documents both in English and Chinese.

On April 4, 2022, Jinhua suggested that the witnesses could be sworn at the United States Embassy but testify at a neutral location. This proposed solution is not a workable for two reasons. First, the government does not believe that an oath taken in the PRC and without any possibility of consequences for untruthful testimony is a meaningful one. Second, the government will need to ensure that the PRC government and the United States government both agree that the testimony can be lawfully taken in the PRC. Third, the logistics of that put an undue burden on people unaffiliated with this case to find a time, place, and the technology to conduct such testimony. These complications are exactly why Jinhua should have raised any interest in remote testimony at a far earlier date. Pulling off an unprecedented procedure from afar and with little time is difficult, to say the least.

Albert Wu and Lu Wensheng are the only witnesses who purport to be unable to travel, and neither one has proffered a sufficient basis to warrant remote testimony. The government has already briefed the merits of the request as to these two witnesses. *See* Dkt. 412. The remote testimony at a United States Consulate or Embassy does not ensure that any oath given is meaningful, as the United

States has no ability to seek any effective remedy for perjury. *See* Dkt. 412 (citing cases).

## II. THE COURT SHOULD CONSIDER WHETHER A TIME-LIMITED CONTINUANCE IS WARRANTED TO SECURE IN PERSON TESTIMONY

For the remaining fact witnesses – Wu Junsheng and Jeff Yu – the Court should consider whether defendant is entitled to a continuance. Generally, the court has broad discretion to grant or deny a continuance, and the Ninth Circuit has a four-part test to assess the decision. *See United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985). The factors are: (1) diligence in efforts to "ready" the defense prior to the date set for the continuance hearing; (2) whether the need for a continuance could have been met if the continuance had been granted; (3) extent to which granting the continuance would inconvenience the court and the opposing party; (4) harm that would be suffered as a result of the denial. *Id.*

The burden is on the defense to establish the basis for a request for a continuance, and it should be a high burden for one raised in the middle of trial. To date, the defense has put forward no evidence as to what efforts it made to ensure the presence of Wu Junsheng or Jeff Yu (or any of its other witnesses) in the United States prior to trial. There is no information as to scheduled dates of travel such as booked air travel, whether the lockdowns apply fully to bar travel or whether there are exceptions in place to permit certain travel, or what information the witnesses had regarding the lockdowns prior to the enforcement of them. This information is relevant to whether the defense was diligent in endeavoring to ensure the witnesses at trial—which goes to the question of what continuance is necessary to ensure that the witnesses come. Although it is difficult to predict when the lockdowns might lift that are said to impact these witnesses, it would be meaningful to be sure that any continuance given to ensure the witnesses will travel to the United States will result in the witnesses in fact testifying, which goes to the second factor. The government respectfully requests that the Court require the defense to proffer facts to establish that the witnesses in fact had planned to come, what those efforts were that establish a genuine intent to travel. This information will provide information necessary to assess whether a continuance is warranted, whether it will result in the witnesses testifying, and if so, for how long.

## III. Criminal Rule 26.1 Permits the Court to Consider the Foreign Labor-Law Expertise on the Papers or by Testimony "without regard to the Federal Rules of Evidence"

The testimony of Professor Jiang is distinct from that of the fact witnesses because Professor Jiang is commenting on foreign law issues, and pursuant to Rule 26.1, the Court can consider Professor

UNITED STATES' SUPPL. MEMO. IN OPP. TO REMOTE TESTIMONY
18-CR-00465 MMC                                         9

Jiang's opinions—as well as the government's rebuttal expert—with or without testimony. *See* Fed. R. Crim. P 26.1 ("A party intending to raise an issue of foreign law must provide the court and all parties with reasonable written notice. Issues of foreign law are questions of law, but in deciding such issues a court may consider any relevant material or source—including testimony—without regard to the Federal Rules of Evidence."); *see also* Dkt. 239 (United States' Motion in Limine to Exclude PRC Labor-Law Expert); Dkt. 277 (Jinhua's Opposition); Dkt. 293 (United States' Reply).

Thus, the testimony of Professor Jiang need not be taken at all. For example, the Court could read the relevant reports and decide if further inquiry is necessary. That inquiry could be outside the rules of evidence and so the parties and the Court could construct whatever mechanism is most useful to the Court to weigh any relevant expert testimony. The government respectfully suggests the Court should decide whether the issues of labor law addressed by Professor Jiang have been sufficiently raised by Jinhua to require the professor's input. If the Court determines that the labor law issues have been sufficiently raised as to make the expert testimony relevant, the government respectfully suggests that the Court first read each expert report and consider whether it has further items to address with either expert, and at that time, determine the best way to get any additional information.

**CONCLUSION**

The Court should deny Jinhua's request for remote testimony. It should consider whether a continuance is warranted, and require Jinhua to justify a continuance by establishing that the witnesses at issue will in fact travel. The Court should set a date for the parties to return to Court for further defense witness examination and, at the conclusion of it, closing argument.

Dated: April 5, 2022                                  Respectfully Submitted,

                                                      STEPHANIE M. HINDS
                                                      United States Attorney


                                                      _____/s/_____
                                                      LAURA VARTAIN HORN
                                                      NICHOLAS WALSH
                                                      Assistant United States Attorneys

                                                      NICHOLAS O. HUNTER
                                                      STEPHEN MARZEN
                                                      Trial Attorneys, National Security Division